Commonwealth *v.* Safe Harbor Water Power Corporation, Appellant.

102

Reargued May 24, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert R. Batt,* with him *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 7, 1966:

Safe Harbor Water Power Corporation (appellant) has appealed from the judgment of the Court of Common Pleas of Dauphin County dismissing its appeal to that court in connection with its 1955 corporate net income tax liability. Appellant had filed its report of that tax on April 11, 1956 (the due date was April 15,

1956), and had reported tax due of $56,345.37. The Commonwealth of Pennsylvania (Commonwealth) subsequently settled the tax at $89,571.55; but on petition for resettlement it reduced the tax to $86,006.22. The original settlement was mailed to appellant on February 18, 1959.

The questions involved in the administrative proceedings and in the court below were reduced on appeal here to two: (1) was the settlement timely in view of the provisions of §8(a) of the Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, reenacted and amended in Act of April 8, 1937, P. L. 227, 72 P.S. §3420(h) (Act); and (2) what is the proper computation of the gross receipts allocation fraction (appellant having allocated only a small amount to Pennsylvania and the Commonwealth having allocated all to Pennsylvania)? Since our determination of the procedural question disposes of the case, we need not discuss or reach the gross receipts fraction question.

Section 8(a) of the Act of 1935, supra (as amended in 1937), states as follows: "All taxes due under this act shall be settled by the department, and such settlement shall be subject to audit and approval by the Department of the Auditor General, and shall, so far as possible, be made so that notice thereof may reach the taxpayer before the end of a year after the tax report was required to be made." Under this requirement, settlement of appellant's 1955 corporate net income tax was required to be made so that as far as possible notice thereof would reach appellant no later than April 15, 1957, one year after the due date. The copy of the settlement was, in fact, not mailed to appellant until February 18, 1959. Therefore, the settlement was at least one year and ten months late in reaching the taxpayer.

The only previous case in which the issue of timeliness was before this Court was *Commonwealth v. Allied Building Credits, Inc.,* 385 Pa. 370, 123 A. 2d 686 (1956). In that case, we sustained the lower court's decision holding that the settlement was invalid because it was made late. In doing so, we adopted excerpts from the opinions of the court below which established certain principles applicable to these situations. They can be summarized as follows: (1) if a settlement is not made within the time provided by the statute, the burden is upon the Commonwealth to explain why the settlement should not be held invalid because of lateness; (2) the justification for permitting the Commonwealth to explain in the first instance is the presence of the phrase "so far as possible" in §8(a) of the Act; (3) this phrase relieves the Commonwealth from compliance with the time requirements of the statute under circumstances wherein the Commonwealth was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly; (4) what constitutes such circumstances is a question which must be determined on the facts of each case.

Since our decision in the *Allied Building Credits* case, supra, the Court of Common Pleas of Dauphin County has decided six cases besides the present one, five in favor of the Commonwealth[1] and one against the Commonwealth.[2] Without reviewing each of those

---

[1] *Commonwealth v. Fruehauf Trailer Co.,* 71 Dauph. 7 (1957); *Commonwealth v. Dresser Industries,* 75 Dauphin 111 (1960); *Commonwealth v. Andale Company,* 75 Dauph. 250 (1960); *Commonwealth v. Lehval Industries, Inc.,* 75 Dauph. 254 (1960); *Commonwealth v. Pennsylvania Manufacturers' Association Casualty Insurance Co.,* 76 Dauph. 275, 78 Dauph. 28, modified on other grounds, 410 Pa. 207, 188 A. 2d 729 (1963).

[2] *Commonwealth v. Tonopah Mining Co.,* 83 Dauph. 279 (1965).

decisions, we deem it appropriate to try and settle the problem with more finality than we did in our earlier decision.

First, we reaffirm the principles established in *Allied Building Credits,* supra. We believe them to be sound. Second, while the duty placed upon the department to act within one year by §8(a) of the act is not absolute and immutable, and there may be circumstances present which if established will allow a settlement of the taxpayer's account after the one-year period has elapsed, the circumstances are not sufficient if they stem solely from the Commonwealth's own procedure in making a settlement. For example, a desire by the Commonwealth to review a prior or later year's return before settling the return in question is not sufficient reason to excuse its lateness in acting. The essence of the inquiry is whether or not the Commonwealth was able to act in time, not whether it was engaged in administrative actions of its own choosing which made timely settlement less expedient. In short, without completely foreclosing the possibility that in a given case something may occur other than an act by the taxpayer itself which prevents settlement, we believe that the only general basis for excusing a late settlement is when the taxpayer does something to delay timely action

We are supported in this conclusion by the fact that under §8(c) of the Act the Commonwealth has an additional two years from the date of settlement to make a resettlement and under §10 of the Act a taxpayer must retain its records pertaining to the report for a period of three years after filing—the total time allowed for settlement and resettlement. Thus, even if the Commonwealth is unsure of what to do with regard

to a settlement, it can still act within the year and can then reconsider its action during the two year resettlement period. This much certainty in tax administration is due the taxpayer and is both desirable and proper.

Turning, then, to the facts in this case, we find four reasons advanced by the Commonwealth to justify its lateness in settling appellant's 1955 tax. None of them constitutes the kind of reason which satisfies the statutory basis for relief. Moreover, even if one or more did suffice in theory, none is justified by the actual facts.

First, the Commonwealth points to its administrative practice of pairing one year's report with that of a prior year and refers to facts showing that appellant's 1954 capital stock tax report, while settled on March 22, 1956 (24 days *prior* to receipt of the report involved in this case), was resettled on September 18, 1956, with notice of this resettlement being mailed to appellant on November 28, 1956. This it (and the court below) says prevented the desired "pairing" until the last date noted and left only four and one-half months to consider settlement of the 1955 corporate net income tax report. We consider this argument wholly untenable. As we have stated above, an administrative practice such as "pairing" reports is no basis at all for excusing a late settlement. Moreover, even if "pairing" were a justification for lateness, we fail to understand how any "pairing" of one year's *capital stock* tax report with a succeeding year's *corporate net income* tax report contributes to settlement of the latter. The two taxes are wholly dissimilar. In addition, the settled 1954 capital stock tax report was available at the time the 1955 corporate net income tax report was received by the Commonwealth and, thus, was immediately available for "pairing". Finally, reliance on the time of a resettlement of the 1954 capital

stock tax report as the date for "pairing" can only lead to an absurd result because the Commonwealth had a full two years to make this resettlement. Had it chosen to utilize this entire period, the date for "pairing" would have been extended for another sixteen months! We find nothing in this argument about "pairing" to justify a delay.

Second, appellant, on *August 19, 1957,* filed a Report of Change for its 1955 corporate net income tax. This, say the Commonwealth and the court below, prevented final ascertainment of its tax at least until after that date. Literally, this is true; but it is irrelevant to the question before us. Reports of Change stem from action by the Federal Internal Revenue Service in auditing a taxpayer's return. When a federal adjustment is made to income, a corresponding adjustment must be reported for Commonwealth purposes. This adjustment may come years after a Commonwealth report is filed, however. It may even come years after a Commonwealth settlement is made. In such a case the Commonwealth's right to resettle is extended by the Act, §7, to a date beyond the date of filing the Report of Change; so the Commonwealth is fully protected. Consequently, Reports of Change play no role whatsoever in considering the timeliness of original settlement. We note, also, that this Report of Change was filed four months after the deadline date for making settlement. Even if a Report of Change were a relevant factor, we fail to understand how the Commonwealth can excuse its failure to act by reference to an event which occurred *after* the last date for acting.

Third, the Commonwealth relies on its practice of "pairing" one utility's report with that of another in the same utility "system" and refers to a "pairing" here of appellant's 1955 report with those of one of its parents, Pennsylvania Power and Light Company. This, it says, could not have been done within the allotted

time because Pa. P. & L. had filed an appeal with regard to its 1953 Capital Stock Tax and this appeal was not terminated until April 24, 1958. Here, too, we reject the "pairing" argument absolutely. We also point out that determination of Pa. P. & L.'s 1953 capital stock tax could hardly affect appellant's 1955 corporate net income tax, that the Pa. P. & L. controversy did not seem to affect settlement of appellant's 1954 taxes and that, in fact, Pa. P. & L. was not a *parent* of appellant in 1953 (it only became so in 1955 after a merger).

Finally, the Commonwealth suggests, its lateness was justified because on October 11, 1957, it began an investigation of appellant's 1954, 1955 and 1956 reports. This investigation was completed and referred to the Department of Revenue's Legal Unit for advice. Only thereafter, contends the Commonwealth, could settlement be made. We find here, again, an argument based upon an internal procedure indulged in by the Commonwealth. *As with "pairing" we reject it absolutely as a justification for delay.* The Commonwealth may investigate as it pleases, but it must settle within the statutory period. As stated above, it has a further two year period for resettlement; and an investigation may easily be made within such period. Parenthetically, we also note that the investigation request here was made six months *after* the deadline date for settlement. Even were it a relevant fact, such a late request could not justify the Commonwealth's failure to meet an already expired deadline.

We find nothing in all this which excuses the delay here. In applying the general principles initially stated, we can only conclude that the Commonwealth's lateness in making settlement was justified by no proper reason. Hence, the settlement was invalid; and the tax report must be accepted as filed. The correct amount of tax, therefore, is $56,345.37. Since appel-

lant has paid $89,571.55, it is entitled to a credit of $33,226.18.

Judgment reversed and record remanded to the court below with directions to enter an order consonant with this opinion.

Mr. Chief Justice BELL and Mr. Justice O'BRIEN concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view, the majority by its exceedingly narrow construction of the words "so far as possible" in §8(a) of the Act, limits the operative effect of the language to only those delays created by the taxpayer. In the future in order to find that the Commonwealth has met the burden of proof as required by our opinion in *Commonwealth v. Allied Bldg. Credits, Inc.*, 385 Pa. 370, 123 A. 2d 686 (1956), upon which the majority expressly relies, a court will have to conclude that the taxpayer is estopped by his own actions from asserting the one year limitation. But since even without this phrase, a taxpayer could not successfully charge the Commonwealth with the failure of timely action because of his own delay in furnishing the taxing authorities with the required records, the majority's construction renders the phrase in question a nullity. The Court's present per se rule, moreover, is totally inconsistent with the view taken in *Allied Bldg. Credits, Inc.*, supra at 378, 123 A. 2d at 691, where the term "so far as possible" was construed to: "carry with it the notion of 'reasonableness' or 'within reason'. This relative use of the term suggests that there are conditions under which it would be unreasonable to require the Department of Revenue to act within the required time, i.e., circumstances wherein the department would be unable to act, or where, even though able to act, it was under some disability whereby the required acts could not be accomplished *efficiently and properly*.

The inclusion of the phrase 'so far as possible' indicates an intent on the part of the Legislature that the provision is *not mandatory* upon the Department of Revenue. It recognizes that the duty placed on the department to act within one year is not absolute and immutable, saying, in effect, there may be circumstances present which, if proven, would allow a settlement of the taxpayer's account to be made after the one (1) year period has elapsed. What would constitute sufficient cause to allow a settlement to be made after the one (1) year period has expired is a question that would have to be determined in each case upon its own particular facts." (Emphasis supplied.)

I fail to understand how the majority can conclude that circumstances "are not sufficient if they stem solely from the Commonwealth's own procedure in making a settlement" and not overrule *Allied.* I view this rigid limitation as being contrary to the express holding in *Allied* which clearly recognizes as a proper reason for delay "circumstances wherein the department would be unable to act, or where, even though able to act, it was under some disability whereby the required acts could not be accomplished *efficiently* and *properly."* (Emphasis supplied.) The effect of the majority's conclusion is to make the provision "so far as possible" mandatory whereas in *Allied* this Court said that phrase "indicates an intent on the part of the Legislature that the provision is *not* mandatory upon the Department of Revenue." (Emphasis supplied.) I see no sound basis, factual or otherwise, for creating the new mandatory limitation on the settlement process which the majority today imposes.

I must also reject the majority's suggestion that the Board of Finance and Revenue assess the taxpayer "even if the Commonwealth is unsure of what to do with regard to a settlement, [since] it can still act

within the year and can then reconsider its action during the two year resettlement period." To mandate or encourage "unsure", and hence uninformed, action on the part of governmental agencies is an unwise and hazardous approach to achieving administrative competency and efficiency. Moreover, settlements made under the pressure of the one year deadline will frequently be arbitrary and unreasonably high, thus further burdening the taxpayer with the necessity of seeking resettlement in order to resolve the matter properly.

The majority's holding again ignores this Court's determination in *Allied* that reasonable delay is permissible in the interest of having the taxing body perform its function "efficiently and properly," nor does it give any reason for its present willingness to shift the emphasis from governmental action accomplished by efficient means to "unsure" action.[1] In the absence of any such reasoning, I would continue to adhere to the principles spelled out in *Allied* that the Commonwealth need not adhere to the strict one year period, provided that it has a reasonable basis for the delay.

Today's opinion has the obvious effect of giving a substantial windfall to the taxpayer who in the past

---

[1] The majority admits quite frankly that it does not understand how the administrative practices, which led to this delay, could possibly be a basis for bringing this settlement within the "so far as possible" exception. Yet the necessity for these procedures are explained in the opinions of the Commonwealth Court in cases arising since *Commonwealth v. Allied Bldg. Credits, Inc.*, 385 Pa. 370, 123 A. 2d 686 (1956). See *Commonwealth v. Fruehauf Trailer Co.*, 71 Dauph. 7 (1957) ; *Commonwealth v. Dresser Indus.*, 75 Dauph. 111 (1960) ; *Commonwealth v. Andale Co.*, 75 Dauph. 250 (1960) ; *Commonwealth v. Lehval Indus., Inc.*, 75 Dauph. 254 (1960) ; *Commonwealth v. Pennsylvania Manufacturers' Ass'n Cas. Ins. Co.*, 76 Dauph. 275, 78 Dauph. 28, modified on other grounds, 410 Pa. 207, 188 A. 2d 729 (1963) ; cf. *Commonwealth v. Tonopah Mining Co.*, 83 Dauph. 279 (1965).

has underassessed himself.[2]   This is unfair not only to the Commonwealth, whose practice in these cases was justifiably based upon our decision in *Allied*,[3] but also to those numerous taxpayers who paid their just obligations when due.   It must also be apparent that this decision will encourage taxpayers to underassess themselves in the future in the hope that the Commonwealth will not act within the time limit now prescribed by this Court.

I am satisfied that on this record the Commonwealth has fully met its burden under the *Allied* case of explaining the delay in making the settlement Therefore, I agree with the court below that the settlement was timely.   See *Commonwealth v. Safe Harbor Water Power Corp.*, 83 Dauph. 11, 15-19 (1964).

The majority's disposition does not require it to consider the second question raised by this appeal, whether the gross receipts' allocation was proper. Therefore, I also refrain from expressing a view on this issue.

---

[2] The majority seems to conclude that this windfall is offset by the fact that the taxpayer is entitled to notice of settlement within the one year period.   Any prejudice to the taxpayer, especially one like the present appellant who has taken full advantage of all appellate procedures, is de minimis.   In this case, for example, the taxpayer has had full use of $30,000.   Moreover, he has not paid any interest or penalty due to his own initial underassessment.   What he now asks is that in addition to having this advantage, his debt to the Commonwealth should be forgiven.

[3] It is undisputed that as a result of today's decision a substantial amount of money already assessed will be lost to the Commonwealth.   Thus the general taxpaying public is the ultimate loser.