## Commonwealth, Appellant, *v.* Western Maryland Railway Company.

526

Argued May 28, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*George W. Keitel,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*Robert D. Myers,* with him *Frank A. Sinon,* and *Rhoads, Sinon & Reader,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1969:

The Commonwealth of Pennsylvania filed these appeals from the judgments entered in the Court of Common Pleas of Dauphin County in a case involving a dispute as to the amount of Capital Stock Taxes due the Commonwealth from the Western Maryland Railway Company (Taxpayer) for the years 1958 and 1959.

Taxpayer filed its Capital Stock Tax report on July 10, 1959, for the year 1958, showing a tax liability in the amount of $46,507.50, and on June 20, 1960, filed a similar report for the year 1959, showing a tax liability of $43,645.50. The Board of Finance and Review made settlement of Taxpayer's 1958 and 1959 Capital Stock Taxes (in greater amounts than that stated by Taxpayer) on March 29, 1961, and notices thereof were mailed to Taxpayer on April 18, 1961. The lower court ruled that these settlements were untimely under Section 801(b) of The Fiscal Code, Act

of April 9, 1929, P. L. 343, §801, 72 P.S. §801(b)[1] and directed judgments to be entered for the amount stated to be due in Taxpayer's reports. The correctness of this ruling is the sole question now before us for determination.

Admittedly the settlements involved were rendered beyond the limitation period specified in the code. As to the Capital Stock Taxes due for 1958, settlement was not made until approximately fifteen and one-half months after the statutory limitation had expired. In the case of such taxes due for 1959, settlement was not made until the limitation period was exceeded by three and one-half months.

Previous decisions of this Court have enunciated the relevant legal principles which must guide our decision. In *Commonwealth v. Allied Building Credits, Inc.*, 385 Pa. 370, 123 A. 2d 686 (1956), we decided that when a tax settlement is made after the expiration of a time limit set out in a statute, the settlement cannot stand absent affirmative proof by the taxing department that it was not possible to make the settlement within the required time.[2]

In *Commonwealth v. Safe Harbor Water Power Corporation*, 423 Pa. 101, 223 A. 2d 223 (1966), we again considered the timeliness of a tax settlement. Specifically reaffirming the principles of *Allied Building Credits, Inc.*, supra, we summarized the applica-

---

[1] Section 801(b) of The Fiscal Code provides as follows: "All such settlements shall, as far as possible, be so made that notice thereof may reach the taxpayer before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made."

[2] The statute involved in *Commonwealth v. Allied Credits*, supra, was the Corporate Net Income Tax Act of April 8, 1937, P. L. 227, 72 P.S. §3420 h(a). Because, however, the statutory language regarding time for tax settlement is quite similar in both the Corporate Net Income Tax Act and The Fiscal Code, the *Allied Credits* decision is perfectly apposite here.

ble legal principles as follows: "(1) if a settlement is not made within the time provided by the statute, the burden is upon the Commonwealth to explain why the settlement should not be held invalid because of lateness; (2) the justification for permitting the Commonwealth to explain in the first instance is the presence of the phrase 'so far as possible' in §8(a) of the Act [the Corporate Net Income Tax Act]; (3) this phrase relieves the Commonwealth from compliance with the time requirements of the statute under circumstances wherein the Commonwealth was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly; (4) what constitutes such circumstances is a question which must be determined on the facts of each case." Later on in *Safe Harbor,* we said: "In short, without completely foreclosing the possibility that in a given case something may occur other than an act by the taxpayer itself which prevents settlement, we believe that the only general basis for excusing a late settlement is when the taxpayer does something to delay timely action."

Hence, the specific question which we must answer is this: "Has the Commonwealth, by affirmative proof, justified the late settlements of the Taxpayer's 1958 and 1959 Capital Stock Tax reports, by establishing that it 'was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly' "?

The Commonwealth contends that it was unable to settle the Taxpayer's 1958 Capital Stock Tax report without first pairing it with the 1957 Capital Stock Tax report; furthermore it asserts that it was unable to settle the Taxpayer's 1959 Capital Stock Tax report without first pairing it with the 1958 report. The Commonwealth thus seeks to avoid the ruling of the *Safe Harbor* decision,—that the administrative prac-

tice of pairing one year's report with that of a prior
year does not excuse an untimely settlement,—by con-
tending that the pairing here involved was an absolute
necessity in settling the taxpayer's reports, and not
just a desirable administrative tax practice.[3]

Assuming, but not deciding that the Commonwealth
has shown a necessity for pairing the Taxpayer's 1958
report with its 1957 report, still, it has failed to prove
that it could not make timely settlements of the 1958
and 1959 Capital Stock Tax reports. The Board of
Finance and Revenue settled the Taxpayer's 1957 Capi-
tal Stock Tax on September 30, 1959, and mailed the
settlement notice to the Taxpayer on December 2, 1959.
The Taxpayer filed its 1958 Capital Stock Tax report
on July 10, 1959, and it was available for pairing al-
most immediately thereafter. Thus, from about Sep-
tember 30, 1959, and certainly no later than Decem-
ber 2, 1959, until December 31, 1959, the pairing of the
1957 report with the 1958 report could have been ac-
complished.[4]

---

[3] The alleged necessity for pairing here was explained by the
Commonwealth's witness as follows:

"The pairing procedure is necessary in that the computations
of the proportions of the taxable assets as computed by the Com-
monwealth in each of its annual settlements reflects a beginning
and ending period. Basically the beginning and end of the year.
For example, the 1957 tax report would have to be settled to es-
tablish the year end value for 1957, which would of necessity be
the 1-1-58 value for the 1958 taxable year. This is one feature.

"The other feature is for uniformity in settlement so that the
Commonwealth's position is fluent throughout all settlements, that
there could be a change wherein a taxpayer may have claimed an
allocation and had been denied, and it is conceivable that the
taxing office in the subsequent year, not seeing this disallowance
by the prior taxing official, may erroneously allow it."

[4] As a matter of fact, when the pairing was finally undertaken
on January 3, 1961, it took but three days to pair the 1958 tax
report with the 1957 tax report, and the 1959 tax report with the
1958 tax report.

Hence, we conclude that even if the pairing of the Taxpayer's 1957 and 1958 reports was a necessary precondition to the settlement of the Taxpayer's 1958 report, still, it could have been done before December 31, 1959, and presumably settlement could have been made by that date. If the 1958 tax report had been timely settled, the 1959 tax report surely could have been settled before December 31, 1960. For the 1959 tax report was filed by the Taxpayer on June 20, 1960, and was available for pairing immediately thereafter. Again assuming that a pairing of the 1959 tax report with the 1958 tax report was necessary to settle the 1959 tax report, still, such a necessity was not the cause of the delay in settling the 1959 tax. Rather, it was the dilatory conduct of the Department of Revenue in initiating the pairing of the Taxpayer's 1957 and 1958 reports, which conduct made the 1958 report unavailable for pairing with the 1959 tax report until January 3, 1961, a time beyond the statutory settlement date for the 1959 tax.

Obviously mindful of the weighty burden of proof it bears in this case, the Commonwealth contends that the Taxpayer's late filing of its 1958 and 1959 tax reports pursuant to extension granted by the Commonwealth made timely settlements of those reports unreasonable. That argument is not persuasive. The Commonwealth's main excuse for the late settlement is that it *could not* settle the taxes until it performed the allegedly requisite pairings, none of which were made until January 3, 1961. In short, the Commonwealth has done nothing but pull from the air arguments relating to the Taxpayer's late filing; certainly it has not in any way demonstrated that the late filings *caused* the late settlements.

Additionally, the Commonwealth argues that the statutory deadline for the initial settlement of the tax reports was extended here by reason of §802(e) of The

Fiscal Code. Section 802 generally outlines the procedure for making settlement. The original settlement is made by the Department of Revenue, and is then transmitted to the Department of the Auditor General. Subsection 802(e) allows the Department of the Auditor General four months within which to agree or to disagree with the proposed settlement. If it disagrees, the proposed settlement is submitted to the Board of Finance and Revenue which, pursuant to §802(f), must reach a decision within three months after it has received the proposed settlement.

The Commonwealth says that in view of the filing extensions afforded to the Taxpayer, it had only five and one-half months to settle the taxes by December 31st, even though §802(e) and (f) authorize a procedure which extends over seven months, where, as here, the Department of Revenue and the Department of the Auditor General cannot agree on a settlement. The Commonwealth thus argues that the only logical construction of The Fiscal Code in this kind of case is to find an implied extension of the settlement date, the extension reaching to some undetermined point.

Although that argument might have merit in the proper case, it is patently irrelevant here. The basic inquiry in this case is, "why was the settlement made after the statutory deadline?" That question is hardly answered by pointing to an element of delay occurring long after the untimely settlement. The disagreement between the fiscal departments did not occur until February 23, 1961, when the Department of the Auditor General returned the proposed settlement to the Department of Revenue without approval. The settlement became untimely on December 31, 1959, in the case of the 1958 tax report; and on December 31, 1960, in the case of the 1959 tax report. Hence, this contention of the Commonwealth is without merit.

The Commonwealth next argues that the 1959 Capital Stock Tax settlement was timely because it was made within the statutory deadline for the settlement of the Taxpayer's Corporate Net Income Tax.[5] The argument proceeds as follows: "Inasmuch as the settlements for both capital stock tax and corporate net income tax are generally determined and mailed at the same time in a single document, it would be unreasonable to require the taxing departments to meet both deadlines by issuing two separate settlements at different times." The effect of sustaining this argument would be to ignore without any authority to do so, the disparate time provisions of The Fiscal Code and the Corporate Net Income Tax Act regarding tax settlements. As desirable as efficient tax administration is, it cannot find justification in the deliberate noncompliance with a detailed provision of a tax statute. It rests with the legislature, not this Court, to equalize the time requirement of the fiscal statutes, if such a change is desirable.

We have considered the other arguments of the Commonwealth, but dismiss them without discussion. In brief, the Commonwealth has failed to carry its burden of proving that the admittedly late settlements of the Taxpayer's 1958 and 1959 Capital Stock Taxes are justified.

Judgments affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I continue to adhere to the views expressed in my dissenting opinion in *Commonwealth v. Safe Harbor Water Power Corp.*, 423 Pa. 101, 109-112, 223 A. 2d

---

[5] The statutory limitation for settlement under the Corporate Net Income Tax Act is twelve months after the date of the filing of the tax report.

223, 227-229 (1966), and I once again must dissent here.

Briefly summarizing my dissent in *Safe Harbor*, I there expressed the opinion that the "so far as possible" language clearly indicates that the Legislature intended the end-of-the-year time limitation to be directory only. The *Safe Harbor* rule, which allows the Commonwealth to be late only where the taxpayer caused the delay, is no rule at all, since the taxpayer could not benefit from a delay of his own causing in any event. The practical result of *Safe Harbor* is to give a potential windfall to the taxpayer who under-assesses himself, in the hope that the settlement will not be made within a year, thereby encouraging under-assessment, and putting the burden unfairly on the general taxpaying public, if the underassessing taxpayer does indeed receive his windfall. No prejudice can occur to a taxpayer who is assessed late, since he has the use of his money, interest-free, during the interim period.

I furthermore believe that the decision in *Safe Harbor* is inconsistent with our subsequent decision in *Parker v. Krick*, 433 Pa. 514, 252 A. 2d 648 (1969). In *Krick*, although we were dealing with a different statute, Act of June 26, 1931, P. L. 1379, §§7, 8, as amended, 72 P.S. §§5348, 5349, the issue was the same as in *Safe Harbor* and the case now before us. Both statutes involve assessment time limits, and in neither case does the statute explicitly state whether the limit is mandatory or directory. The case before us is, if anything, a stronger one than *Krick* for holding the statute directory, since the statute in *Krick* contained no "as far as possible" language.

In *Krick* we held, citing *Pennsylvania Railroad Co. v. Board of Revision of Taxes*, 372 Pa. 468, 473, 93 A. 2d 679, 682 (1953), that "we need not consider a provision of this type to be mandatory 'so long as the

rights of property owners to protest their assessments and to appeal therefrom are respected. . . . Moreover, the Act was not intended to afford an escape for a property owner from just taxation because of the oversight, inadvertence or dilatoriness of an assessor or of the Board of Revision.' " 433 Pa. at 516, 252 A. 2d at 649. I believe that the theory of *Krick* applies equally here. There is no indication that the taxpayer has in any way been prejudiced in his appeal rights by the late assessment. Under *Krick* and *Pennsylvania Railroad*, this should be controlling, and a taxation windfall should not be permitted.