Commonwealth, Appellant, *v.* Wanamaker.

Argued May 25, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George W. Keitel,* Deputy Attorney General, for Commonwealth, appellant.

*C. Walter Randall, Jr.,* with him *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 17, 1972:

The Commonwealth of Pennsylvania appeals from the final judgments of the Court of Common Pleas of Dauphin County declaring invalid and setting aside settlements of the appellee's Corporate Net Income and Capital Stock taxes for seven fiscal years ending January 31, 1958 through January 31, 1964.[1]

The case was heard without a jury pursuant to the Act of April 22, 1874, P. L. 109, §1, 12 P.S. §688 and a stipulation of facts was submitted to the court in which each party reserved the right to offer further evidence.[2]

---

[1] Appellee, a Pennsylvania corporation engaged in the department store business, operates on the basis of fiscal years ending January 31st of each calendar year.

[2] At trial of the issue the Commonwealth presented the testimony of Charles Rodgers, a taxing officer of the Department of Revenue, who explained the taxing procedures *generally employed* after a tax report has been filed, including the use of the pairing technique and the need therefor.

For the fiscal years in question the Capital Stock and Corporate Net Income Tax reports were due and were actually filed, pursuant to granted extensions of time, as follows:

| Fiscal Year Ended | Report Due | Date of Filing |
|---|---|---|
| 1-31-58 | 5-15-58 | 11-15-58 |
| 1-31-59 | 5-15-59 | 8-17-59 |
| 1-31-60 | 5-15-60 | 8-16-60 |
| 1-31-61 | 5-15-61 | 11-15-61 |
| 1-31-62 | 5-15-62 | 8-15-62 |
| 1-31-63 | 5-15-63 | 11-18-63 |
| 1-31-64 | 5-15-64 | 8-18-64 |

The following table discloses the dates settlements were required to be effected "so far as possible" under the applicable statutes, and the dates upon which notices of proposed settlements were actually mailed to appellee:

| Reports for Fiscal Year Ended | One Year After[3] Due Date of Report | One Year After Actual Filing of Report | Actual Date of Mailing of Notice |
|---|---|---|---|
| 1-31-58 | 5-15-59 | 11-15-59 | 1-22-64 |
| 1-31-59 | 5-15-60 | 8-17-60 | 1-22-64 |
| 1-31-60 | 5-15-61 | 8-16-61 | 1-22-64 |
| 1-31-61 | 5-15-62 | 11-15-62 | 1-22-64 |
| 1-31-62 | 5-15-63 | 8-15-63 | 1-22-64 |
| 1-31-63 | 5-15-64 | 11-18-64 | 8-25-66 |
| 1-31-64 | 5-15-65 | 8-18-65 | 8-25-66 |

Wanamaker introduced into evidence settlements of its tax reports for the three fiscal years ending January 31, 1966, 1967, 1968, disclosing such settlements to have been made within one year after filing the reports. Their relevance, it was claimed, was to rebut any inference that it is impossible for the Commonwealth to make a settlement within one year after a report has been filed.

[3] These are the dates specified with respect to Corporate Net Income Tax. With respect to Capital Stock Tax, the dates would all be 1-31 instead of 5-15.

In each instance the lower court found that the Commonwealth failed to justify its late settlement. Having ruled that such settlements were untimely under Section 801(b) of The Fiscal Code, Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §801(b) and Section 8 of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3420h(a),[4] judgment was entered for the amount stated to be due in the taxpayer's reports, subject to certain changes of liability due to federal tax adjustments. Exceptions were filed by the Commonwealth which were dismissed by the court en banc. This appeal followed.[5]

In addition to questioning the correctness of the lower court's ruling with respect to timeliness of these settlements, the Commonwealth also asserts: (1) that the trial judge committed reversible error in refusing its submitted findings of fact and by failing to indicate the reason therefor; (2) that our construction of untimely settlements as invalid is a usurpation of the legislative process; and (3) that the issue of timeliness of settlement for the first five years was not properly raised.

---

[4] 72 P.S. §801(b) provides: "All such settlements shall, as far as possible, be so made that notice thereof may reach the taxpayer before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made."

72 P.S. §3420h(a) provides: "All taxes due under this act shall be settled by the department, and such settlement shall be subject to audit and approval by the Department of the Auditor General, and shall, so far as possible, be made so that notice thereof may reach the taxpayer before the end of a year after the tax report was required to be made."

[5] In the proceedings below, appellee had also questioned the Commonwealth's action with regard to tax reports for the fiscal year ended January 31, 1965. The court held that appellant had made valid and timely settlements with respect to that tax year. Exceptions were dismissed and no appeal was pursued.

We are satisfied that the Commonwealth neither moved to settle these taxes in a timely fashion nor offered adequate justification for such lengthy delays and accordingly affirm the judgments of the lower court.

The law with regard to timeliness of settlement has been articulated by this Court on three prior occasions. In *Commonwealth v. Allied Building Credits, Inc.,* 385 Pa. 370, 123 A. 2d 686 (1956), it was held that when a tax settlement is made after the expiration of the time limit set out by statute, the settlement cannot stand absent affirmative proof by the taxing department that it was not possible to make the settlement within the required time. A decade later in *Commonwealth v. Safe Harbor Water Power Corp.,* 423 Pa. 101, 104, 223 A. 2d 223 (1966), this Court reaffirmed *Allied* and summarized the applicable legal principles as follows: "(1) [I]f a settlement is not made within the time provided by the statute, the burden is upon the Commonwealth to explain why the settlement should not be held invalid because of lateness; (2) the justification for permitting the Commonwealth to explain in the first instance is the presence of the phrase 'so far as possible' in §8(a) of the Act [Corporate Net Income Tax Act];[6] (3) this phrase relieves the Commonwealth from compliance with the time requirements of the statute under circumstances wherein the Commonwealth was unable to act at all or, though able to act, was under some disability which prevented it from acting promptly; (4) what constituted such circumstances is a question which must be determined on the facts of each case." The opinion added the qualification that

---

[6] The phrase "so far as possible" and "as far as possible" contained in the two statutory provisions presently under consideration are regarded as synonymous. See *Commonwealth v. Western Maryland Railway Co.,* 435 Pa. 525, 257 A. 2d 530 (1969).

"without completely foreclosing the possibility that in a given case something may occur other than an act by the taxpayer itself which prevents settlement, we believe that the only general basis for excusing a late settlement is when the taxpayer does something to delay timely action." Id. at 105.

In summary, while both Section 801(b) of The Fiscal Code and Section 8(a) of the Corporate Net Income Tax Act have been interpreted as placing an affirmative duty on the Department of Revenue to settle these corporate taxes within one year, it has also been recognized that extenuating circumstances can, if proven, relieve the authorities from strict compliance with the statutory limitation. Lest these provisions become more honored in their breach, which was never the legislative intent, we have been most discriminating in determining what constitutes acceptable excusing circumstances. See *Commonwealth v. Safe Harbor Water Power Corp.*, supra, and *Commonwealth v. Western Maryland Railway Co.*, supra.

In considering these appeals we shall first examine those settlements for the fiscal years ending January 31, 1958 to January 31, 1962 inclusive; and next, the settlements for the years ending January 31, 1963 and 1964.

SETTLEMENTS FOR THE YEARS 1-31-58 TO 1-31-62

The delays in this group of taxes range from five months to almost five years beyond the statutory expiration date.

The first year on appeal is that of the year ending January 31, 1958. One year after the actual filing date was November 15, 1959. Notice of settlement was given January 22, 1964.

The Commonwealth purports to justify the glaring tardiness of these settlements by embroidering its argument of the general necessity for pairing with the further notion that here such operations could not be

commenced until after the prior year had been resettled. The taxes for the previous year (1-31-57) were not settled until March 18, 1959. On June 17, 1959 appellee filed petitions for resettlement and the taxes were resettled November 4, 1960.

As the first year on appeal awaited final action on the year previous several subsequent tax years also fell due and were held in abeyance pending the resettlement.

The lower court found that the Commonwealth had not timely acted as to the 1957 settlement and had not demonstrated that this late settlement was without impact upon timely settlement of the 1958 taxes. Thus the court did not deem it necessary to answer the Commonwealth's contention that a prior year's tax settlement does not become available for pairing purposes until the conclusion of the resettlement procedure.

It is clear to us, however, that the practice of consolidating subsequent tax reports to await resettlement of a prior year, can be, and here was, destructive of the legislative time scheme for the settlement and resettlement of taxes.[7]

A rather similar argument was advanced and rejected in *Commonwealth v. Safe Harbor Water Power Corp.*, supra. There we observed that "[R]eliance on the time of resettlement . . . as the date for 'pairing' can only lead to an absurd result because the Common-

---

[7] At the time this case arose it was provided by statute that the Commonwealth had one year "so far as possible" in which to settle* and two years to resettle these taxes. The taxpayer has the obligation of maintaining its business records for a period of three years after any report was filed. 72 P.S. §3420j. The procedures here employed enabled the taxing authorities to flout these provisions with impunity.

* Under the Tax Reform Code of 1971 the time for settlement of both Capital Stock and Corporate Net Income taxes was extended to two years. See Act of March 4, 1971, P. L.      , No. 2, Art. IV, §407, as amended, 72 P.S. §7407(a).

wealth had a full two years to make this resettlement. Had it chosen to utilize this entire period, the date for 'pairing' would have been extended for another sixteen months!" 423 Pa. at 106, 107.

The record discloses that no effort was made to settle the taxes for the years ending 1-31-59 and 1-31-60 within a year from the time they were filed. As to the fourth year in this group (year ending January 31, 1961), one year after the filing date of the report was November 15, 1962. It was not until *after* November 15, 1962 that the taxing authorities initiated any steps towards settlement of these taxes.

The fifth and final year of this group was that of the year ending January 31, 1962. One year after the filing date was August 15, 1963. Although the Commonwealth undertook a field examination during this period, the real reason for delay seems to be the Commonwealth's action of consolidating this report for consideration with the four others then pending.

The stipulation notes that from November 22, 1960 to September 24, 1963 requests for further information were made of appellee; that there was a federal examination of the corporate net income tax reports for federal purposes which then required a report of change to state taxing authorities; that the Department of Revenue questioned appellee's entitlement to a manufacturing exemption, requiring an opinion from the legal division and that these authorities felt impelled to and did conduct a field examination of appellee.

However, as we stated in *Safe Harbor,* supra, "The Commonwealth may investigate as it pleases, but it must settle within the statutory period." 423 Pa. at 108. There we also conceded that a report of change does prevent final ascertainment of the tax at least until after the date such report is made. But we further observed that in such a situation the Common-

wealth's right to resettle is extended by statute so that the Commonwealth is fully protected.

Our review of the record reveals that for all seven tax years appellee requested and received time extensions for filing these reports. Further, appellee did not respond immediately to a request for information on certain securities and there was a delay of some months in furnishing manufacturing information. In the proper case these facts would have merit in justifying the Commonwealth's delay but they have none instantly. The securities information was requested on March 26, 1959 in connection with the 1-31-58 tax reports. The taxpayer took two and one-half months to forward the requested data. These taxes were not settled, however, until January of 1964. On September 29, 1960, the Commonwealth informed appellee by letter that the 1958 and 1959 Capital Stock Tax reports were under consideration for settlement and requested information on the claimed manufacturing exemption. After a series of time extensions this information was forwarded June 15, 1961. Such delay is minimized by the fact that an additional thirty-one months elapsed before these taxes were ever settled!

SETTLEMENTS FOR THE YEARS 1-31-63 AND 1-31-64

Both taxes for these fical years were settled August 25, 1966, a delay of one year and nine months in the former instance and a little over a year in the latter. [One year after the actual filing date was November 18, 1964 for the 1963 tax and August 18, 1965 for the 1964 levy.]

Once again the Commonwealth waited to begin work on these reports until the *resettlements* for the first five tax years on appeal were completed on May 10, 1966. The lower court simply held that late settlement had not been justified by the Commonwealth since no

action of any sort was taken during the statutory period. For the reasons previously discussed we reiterate our rejection of the procedures employed by the Department of Revenue. Their net effect was to erode the vitality of the legislative time scheme and to destroy the desirable certainty in tax administration.

Having disposed of the primary issue, we move to the other points. It is the Commonwealth's contention that the trial judge erred in refusing to affirm eighteen of twenty-three requests for findings of fact since all were supported by the evidence contained in either the stipulation of facts or in the oral testimony. Failure to indicate why such requests were denied is urged to be a violation of our holding in *Commonwealth v. General Foods Corporation,* 429 Pa. 266, 239 A. 2d 359 (1968).[8]

---

[8] In *General Foods,* supra, a complex tax case tried nonjury pursuant to the provisions of §1 of the Act of April 22, 1874, P. L. 109, 12 P.S. §688, the facts were only partially stipulated with an additional 257 pages of testimonial evidence comprising the balance of the record. In its opinion sustaining the taxpayer the lower court narrated the factual material found relevant but did not state separately and distinctly the facts found and the conclusions of law.

12 P.S. §689 provides in pertinent part: "The decision of the court shall be in writing, and, if requested by counsel for either party for the purposes of filing exceptions or for the taking of an appeal, shall state separately and distinctly the facts found . . . and the conclusions of law. . . ."

The opinion of this Court observed, "Usually in this type of tax appeal the facts are established by means of a stipulation entered into between the parties. In such circumstances it is a satisfactory compliance with the above statutory language for the trial court to state that it adopts as its findings of fact in the case those facts which have been stipulated as such by the parties." 429 Pa. at 270. A footnote added, "We do not approve, however, of a court's omitting such a reference completely even though all facts are stipulated." Id. at 270.

The Court said it was not its function to review the record to discern for itself what facts were revealed by the evidence and

It is our view that the court's refusal was not in error since it accepted the facts as stipulated and therefore needn't have accepted them as rephrased by appellant. Two of the submitted findings, Nos. 22 and 23, came from the additional testimony which appellant chose to present. The difficulty with this testimony was its relevance; the witness, Rodgers, had not worked on the Wanamaker reports and could not testify as to them specifically. Instead what was presented was a brief narrative of *why in general* the Commonwealth finds it necessary to pair. While it would have been better for the court to elucidate its refusal, it is certainly not reversible error.

The argument is also made that the courts have improperly resorted to judicial legislation in declaring that untimely settlements are void and that in such instances the tax report is to be treated as a settlement since the statutes here involved contain no such provisions. This Court has uniformly held the sanction of nullification to be the effect of late settlement in the *Allied Building Credits, Safe Harbor* and *Western Maryland* cases.

Not only is this construction permissible but in point of fact it rescues these statutes from total irrelevance. It is a primary canon of construction that statutes must be construed in such a way as to effectuate the legislative purpose and policy. Had these statutes been interpreted in any other manner the Department of Revenue could flout them at will reducing the legislative efforts to a series of vain acts. The Commonwealth's interpretation renders the provisions for settlement, resettlement and maintenance of records a mere form of words and we decline to accept it.

---

remanded the case to the lower court with directions to list pertinent specific facts.

There is no comparison between this egregious situation and the present case.

In this connection it remains only to be pointed out that the legislature only last year amended the settlement provisions to provide a two-year period within which the department may now validly act on such reports. They did not see fit to provide that an attempted settlement which did not meet the requirements of the new section would nonetheless be valid. "It is well settled that the failure of the legislature, subsequent to a decision of this Court in construction of a statute, to change by legislative action the law as interpreted by this Court creates a presumption that our interpretation was in accord with the legislative intendment." *Pennsylvania Labor Relations Board v. Uniontown Hospital Assn.*, 432 Pa. 146, 149-50, 247 A. 2d 621 (1968).

The Commonwealth's final argument is that the issue of timeliness of settlement for the first five years on appeal was not properly raised.

Section 1104 of The Fiscal Code, 72 P.S. §1104 which pertains to appeals like the instant case, provides in relevant part: "Appeals taken hereunder shall be hearings de novo, and no questions shall be raised by the appellant that were not brought to the attention of the department making the settlement, *or* in the application for resettlement, *or* petition for review prior to the appeal, *and* set forth in the specification of objections contained in the affidavit accompanying the appeal, unless the court shall be satisfied that the appellant was unable, by the exercise of reasonable diligence, to have raised such questions before the department making the settlement and the Board of Finance and Revenue, and no questions shall be raised which are not included in the specification of objections filed as hereinbefore provided." [Emphasis supplied.]

Wanamakers raised the issue of timeliness as to these first five years in its petition for review. The Commonwealth contends that the use of the double negative in this provision [§1104] implies that a question

cannot be raised on appeal if it was not raised in all three situations specified.[9] This argument attributes unintended ingenuity to the legislature. If the lawmakers desired to have the taxpayer preserve his points for appeal by presenting them at three different times they could have easily provided so without forcing the courts to substitute *"and"* for *"or"*.

Judgments affirmed.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I continue to dissent from the majority's unwarranted, unreasonable, and unwise interpretation of Section 8(a) of the Act which not only awards "potential windfall[s] to the taxpayer who underassesses himself," but actually encourages taxpayers to underassess themselves "in the hope that the settlement will not be made within a year." *Commonwealth v. Western Maryland Ry. Co.*, 435 Pa. 525, 534, 257 A. 2d 530, 534 (1969) (ROBERTS, J., dissenting). Although my reasons for dissenting have been succinctly presented in two previous dissents on this identical issue, *Commonwealth v. Western Maryland Ry. Co.*, supra; *Commonwealth v. Safe Harbor Water Power Corp.*, 423 Pa. 101, 223 A. 2d 223 (1966) (ROBERTS, J., dissenting), the importance of this question compels me to briefly reiterate the bases for my conclusion.

———

[9] The Commonwealth contends that it was not the intention of the legislature to permit a taxpayer to raise a question before the court which was not raised before the Board of Finance and Revenue, which is a possible result of the lower court's construction of §1104. It is noted that the issue could be raised but once before the department making settlement and then omitted from the petitions for resettlement and review. Therefore, we are urged to change the disjunctive *or* to the conjunctive *and* in order to harmonize the statute. The lower court answered by saying, "Subsequent language which employs the conjunction 'and' cannot be construed to control over what is clearly expressed in the first instance."

First, the majority persists in misinterpreting the statute so as to completely deprive the phrase, "so far as possible", of any meaning whatsoever. In *Commonwealth v. Allied Bldg., Credits, Inc.*, 385 Pa. 370, 378, 123 A. 2d 686, 691 (1956), this Court interpreted this statutory phrase to mean "reasonable" or "within reason". The Court there stated: " 'The inclusion of the phrase "so far as possible" indicates an intent on the part of the Legislature that the provision is not mandatory upon the Department of Revenue. It recognizes that the duty placed on the department to act within one year is not absolute and immutable, saying, in effect, there may be circumstances present which, if proven, would allow a settlement of the taxpayer's account to be made after the one (1) year period has elapsed. What would constitute sufficient cause to allow a settlement to be made after the one (1) year period has expired is a question that would have to be determined in each case upon its own particular facts.' " Id.

However, the Court in *Safe Harbor*, supra, unnecessarily restricted the "operative effect of the language to only those delays created by the taxpayer." Id. at 109, 223 A. 2d at 227-28 (ROBERTS, J., dissenting). This construction rendered the phrase in question a nullity ". . . since even without this phrase, a taxpayer could not successfully charge the Commonwealth with the failure of timely action because of his own delay in furnishing the taxing authorities with the required records. . . ." Id. Clearly the Legislature did not intend to include a meaningless phrase in the statute. Therefore this Court should observe the express intent of the Legislature and abandon its unreasonably restrictive reading of the statute.

Secondly, I can conceive of no justification for absolving the taxpayer of his tax liability when he suffers absolutely no prejudice as a result of the delay in

assessment. In fact, the taxpayer who is assessed as here, actually receives the windfall use of his money, interest-free, during the interim period, and furthermore, pays no penalty for originally underassessing himself. The taxpayer now seeks "that in addition to having this advantage his debt to the Commonwealth should be forgiven." *Commonwealth v. Safe Harbor Water Power Corp.*, supra at 112 n.2, 223 A. 2d at 229 n.2. The majority advances no rational basis for permitting the corporate taxpayer to escape this lawfully imposed tax liability. Moreover, today's decision arbitrarily places upon the Commonwealth the severe sanction of forfeiting lawfully accrued tax revenues. Such an unrealistic, unconventional and unsound result compels dissent.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissent.