611 A.2d 797

The GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1992.

Decided June 10, 1992.

■■■■■■■

■■■■■■■

William Y. Rodewald, for petitioner.

John J. Butchar, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

CRAIG, President Judge.

The Guardian Life Insurance Company of America (Guardian) appeals from an order of the Board of Finance and Revenue which refused Guardian's petition for a refund of $139,310.00 in retaliatory tax paid for the calendar year 1985. Because our interpretation of the relevant statutes leads us to conclude that the Department of Revenue did not settle Guardian's retaliatory "tax" in an untimely fashion, we affirm the board and deny Guardian's refund request.

## BACKGROUND

Both parties agreed to a Stipulation of Facts on October 4, 1991, which we adopt as our own findings of fact and summarize as follows. Guardian is incorporated and headquartered in the State of New York, and licensed to transact business in Pennsylvania. Guardian timely filed its 1985 Gross Premiums Tax Report [1] and its Retaliatory Tax Information Report on or before February 28, 1986, the due date for both of which was April 15, 1986. Guardian paid $806,610.16 in gross premiums taxes, but reported that it owed no retaliatory tax for 1985.

■■■ Retaliatory tax is calculated by comparing the burdens that another state imposes on Pennsylvania insurance companies doing business in that state, to burdens that Pennsylvania

---

1. Section 902(a) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7902(a), requires every insurance company transacting business in Pennsylvania to pay "a tax at the rate of two per cent of the gross premiums received from business done within this Commonwealth during each calendar year...."

imposes on foreign insurance companies doing business in Pennsylvania, and a retaliatory tax is designed to equalize those burdens, pursuant to section 212 of The Insurance Department Act of 1921 (Retaliatory Statute), Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 50. In this instance, Guardian reported that it owed no retaliatory tax for 1985 based on its determination that New York imposed no greater burdens on Pennsylvania insurance companies operating in New York than Pennsylvania imposed on New York companies operating in Pennsylvania; thus Pennsylvania had no reason to "retaliate."

In May and June of 1987, the Department of Revenue requested, and Guardian provided, additional information concerning retaliatory tax for 1985. On July 14, 1987—after the expiration of the calendar year (1986) following the 1985 tax year—the department mailed a final settlement sheet to Guardian, stating that the company owed $139,310.00 in retaliatory tax for 1985. Guardian paid this tax on July 28, 1987, and then timely petitioned the board for a refund on December 17, 1987. The board denied Guardian's petition for a refund on April 26, 1988, and Guardian petitioned this court for review on May 6, 1988. On August 19, 1991, Guardian amended its petition to remove all claims except the claim that the department's settlement of Guardian's 1985 retaliatory tax was untimely and therefore invalid, entitling Guardian to a refund or credit of the $139,310 in retaliatory tax already paid.

In this *de novo* appeal,[2] we must resolve the purely legal question of what time limit applies to the Department of Revenue's settlements of retaliatory tax, given that the Retaliatory Statute is silent on this question, and the other applicable statutory provisions appear to be in conflict. In this tax appeal from the board we must interpret and apply state law

2. Although this court has the power to resolve factual disputes in appeals from the Board of Finance and Revenue, *PICPA Foundation for Education and Research v. Commonwealth,* 143 Pa.Commonwealth Ct. 291, 295, 598 A.2d 1078, 1080 n. 6 (1991), the mutual stipulations which the parties developed has eliminated disputes of fact in this case.

Of course, our scope of review of the legal question of statutory interpretation, which is pivotal in this case, is unrestricted.

to the facts before us, as established by the parties' stipulations. Pa.R.A.P. 1571; *Escofil v. Commonwealth,* 46 Pa. Commonwealth Ct. 475, 477, 406 A.2d 850, 852 (1979), *aff'd per curiam,* 499 Pa. 207, 452 A.2d 1012 (1982).

## STATUTORY FRAMEWORK

The Retaliatory Statute provides, in relevant part:

"Burdens or Prohibitions" includes taxes, fines, penalties, licenses, fees, rules, regulations, obligations, and prohibitions....

. . . .

If any other state imposes any burdens or prohibitions on insurance companies, or agents of this state doing business in such other state, which are in addition to, or in excess of, the burdens or prohibitions imposed by this Commonwealth on insurance companies and agents, like burdens and prohibitions shall be imposed on all insurance companies and agents of such other state doing business in this Commonwealth, so long as the burdens and prohibitions of such other state remain in force.

40 P.S. § 50.

Neither this section, nor any other part of the Retaliatory Statute specifies the time period within which the department must impose or settle this retaliatory tax.

The retaliatory tax, although commonly referred to as a "tax," is not technically a tax, but is more properly a business license fee or charge, imposed to regulate insurance companies. *Commonwealth v. Fireman's Fund Insurance Co.,* 369 Pa. 560, 87 A.2d 255 (1952). The purpose of the Retaliatory Statute, and of similar laws enacted in almost every state, is to encourage equal treatment of domestic and foreign insurance companies, and to break down interstate barriers. *Id.,* 369 Pa. at 564, 87 A.2d at 258. The Retaliatory Statute "is certainly not a revenue raising measure. In fact, its success might be said to depend on how little is collected under its terms rather than how much." *Id.*

■ In order to determine if any retaliatory tax is owed, the department must calculate the economic burdens and prohibitions, primarily taxes, that Pennsylvania places on New York companies, compare that to the economic burdens and prohibitions that New York places on Pennsylvania companies, and if the New York side of the equation exceeds the Pennsylvania side, the department uses "the retaliatory tax[ ] to bring the sides into balance." *Providence Washington Insurance Co. v. Department of Revenue, Board of Finance and Revenue,* 75 Pa. Commonwealth Ct. 463, 472, 463 A.2d 68, 72 (1983), *aff'd per curiam,* 504 Pa. 506, 475 A.2d 741 (1984). Therefore, the department first must calculate the burdens and prohibitions imposed by both of the relevant states before it can compute the retaliatory tax owed, if any.

■ Section 201 of The Fiscal Code [3] provides that the Department of Revenue shall have the power to collect "taxes, license fees, and other moneys due the Commonwealth." However, the department must impose various taxes and fees within different time limits, according to applicable statutory provisions.

Section 801(a) of The Fiscal Code, 72 P.S. § 801(a), applies to all "taxes and bonus due the Commonwealth," and subsection (b) of that section provides that:

> (b) All such settlements, shall, as far as possible, be so made that notice thereof may reach the taxpayer before the end of the year succeeding the year for which the tax or bonus report or return was made or ought to have been made.

72 P.S. § 801(b). If applicable here, this provision, which we will refer to as the "one-year limit," would require the department to settle Guardian's 1985 retaliatory tax by December 31, 1986. Both parties agreed that if the one-year limit applies, the department's July 14, 1987 settlement was untimely, entitling Guardian to a refund or credit of the $139,310 already paid.

3. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 201.

But, in apparent conflict with the one-year limit is the "eighteen-month limit," which applies to the settlement of the gross premiums tax imposed by section 902(a) of the Tax Code. Section 904 of the Tax Code, 72 P.S. § 7904, incorporates by reference the eighteen-month limit provided in section 407(a) of the Tax Code, 72 P.S. § 7407(a), making the eighteen-month limit applicable to gross premiums tax settlements. Section 407(a) of the Tax Code provides:

(a) All taxes due under this article shall be settled by the department, and such settlement shall be subject to audit and approval by the Department of the Auditor General, and shall, so far as possible, be made so that notice thereof may reach the taxpayer within eighteen months after the tax report was required to be made.

Thus, if the eighteen-month limit applies here, the department's settlement of Guardian's 1985 retaliatory tax was timely because it was settled before the deadline of October 15, 1987, which was eighteen months after the tax due date of April 15, 1986.

The problem remains, however, that both the one-year limit and the eighteen-month limit by their express terms apply to taxes, and the retaliatory tax is not a tax. Section 1001 of The Fiscal Code, 72 P.S. § 1001, entitled "Settlements with debtors when no other method provided by law for collection" states, in relevant part:

In all cases in which any person, association, corporation, public officer, or other party, is indebted, or is believed to be indebted, to the Commonwealth, and no other method for collection of such debt is provided by law, it shall be the duty of the Department of Revenue to state and settle an account with the debtor, ... as in the case of tax settlements, and the subsequent procedure shall be the same as in the case of tax settlements.

This section directs the department to settle retaliatory tax in the same manner and using the same procedures as tax settlements. But, the question remains open as to *which* tax settlement procedures the department must follow, the one-year limit, which applies generally to all taxes under The

Fiscal Code, or the eighteen-month limit, which applies to taxes imposed by the Tax Code which specifically incorporate that time limit.[4]

Because the legislative intent of the retaliatory statute, namely, to encourage equal treatment of insurance companies across state lines, can be implemented most effectively if the retaliatory tax and gross premiums tax are settled at the same time, we hold that the eighteen-month limit which governs the gross premiums tax also governs the retaliatory tax.

## STATUTORY INTERPRETATION

■ Our goal in interpreting the relevant statutes in this case is, of course, to "ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). When the language of the statute is not explicit, as is the case with the Retaliatory Statute time limit for settlement, section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c), provides a list of elements which may be considered to ascertain legislative intent, including:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be obtained.

. . . .

(6) The consequences of a particular interpretation.

. . . .

(8) Legislative and administrative interpretations of such statute.

Finally, in ascertaining legislative intent, section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922, allows certain presumptions, including the presumption that the legislature

---

**4.** Guardian argues that whether the retaliatory tax is considered a tax or not, the outcome is the same because the one-year limit in 72 P.S. § 801(b) applies generally to all taxes owed the Commonwealth, and applies to other debts pursuant to 72 P.S. § 1001. However, the question of *which* tax settlement procedures should apply remains open to interpretation.

does not intend a result that is absurd, impossible to execute, or unreasonable.

With these interpretive rules in mind, we conclude that the Retaliatory Statute set out to remedy unequal treatment of insurance companies among the states by imposing a retaliatory tax to bring about equal treatment. *Fireman's Fund Insurance Co.* Given that the department must first calculate each state's burdens on the insurance companies before it can equalize them with the retaliatory tax, the department's policy of settling the retaliatory tax together with the gross premiums tax best effectuates the intent of the legislature.[5]

Guardian's suggestion that the department could *estimate* the retaliatory tax within the one-year limit and make final settlement within the eighteen-month limit may be true, but that argument presumes that the legislature intended that the department implement the statute by an estimate rather than by a firm figure. Although, as Guardian argues, the retaliatory tax may be simple to compute once the gross premiums tax is known, the final amount of the retaliatory tax cannot be settled until the final amount of the gross premiums tax is settled. As in this case, the department may require additional information after the returns are filed before it can calculate the final amounts owed.

Therefore, to require the department to send an estimate of retaliatory tax within the one-year limit when that tax can be finally calculated within the eighteen-month limit entails an unreasonable duplication of effort; we cannot presume that the legislature intended such procedures. In addition, the fact stipulated to by both parties, that the department estimated Guardian's settlement of retaliatory tax owed for 1989 within the one-year limit is not relevant here. Although this fact demonstrates that the department can estimate retaliatory tax within the one-year limit, it does not persuade us to conclude that an estimated settlement within one year is required.

5. This court reviewed the purpose of the retaliatory tax and approved of this method of calculation in *Providence Washington Insurance Co.,* 75 Pa.Commonwealth Ct. at 472, 463 A.2d at 72.

Guardian, relying on *West Penn Power Co. v. Cohen*, 502 Pa. 25, 463 A.2d 418 (1983), contends that the eighteen-month limit does not apply to retaliatory tax in the absence of a specific provision in the statute incorporating that time limit. In *West Penn Power Co.*, the utility company sought to compel the department, by request for mandamus, to settle its PUR-TA taxes, where the act itself did not contain any settlement procedures.[6] Our Supreme Court held that mandamus would not lie to compel a formal settlement of PURTA taxes by the department, but in the event the department disagreed with the taxpayer's report, it had the discretion, but was not required, to settle the dispute pursuant to the settlement procedures in section 801(d) of The Fiscal Code, 72 P.S. § 801(d). *Id.*, 502 Pa. at 28, 463 A.2d at 420. The Supreme Court also stated that the eighteen-month settlement procedure contained in the Tax Code at 72 P.S. § 7407 did not apply to PURTA because that section, incorporated by reference in other Tax Code sections, was "conspicuously omitted in PURTA." *Id.*, 502 Pa. at 32, 463 A.2d at 422.

However, *West Penn Power Co.* does not require us to apply the one-year settlement provisions in The Fiscal Code to the retaliatory tax, rather than the eighteen-month provision in the Tax Code, because of two crucial differences in the facts of the two cases. First, the question in *West Penn Power Co.* concerned whether the department was required to settle the utility company's taxes at all, not which time limit should apply. Second, and more important, because PURTA is a tax, and not a fee or charge, it is not unreasonable to apply The Fiscal Code settlement procedures to PURTA, given that The Fiscal Code applies generally to "all taxes and bonus due the Commonwealth." 72 P.S. § 801(a). The Supreme Court's choice of The Fiscal Code settlement procedures over the Tax Code's in *West Penn Power Co.* for PURTA, a tax, is not directly dispositive of our decision in this case precisely because the retaliatory tax is not a tax.

6. Public Utility Realty Tax Act (PURTA), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 8101–A—8108–A.

Our application of the eighteen-month limit to the retaliatory tax does not mean that we view it as part of the gross premiums tax, making it necessary to settle the two items together. Rather, we apply the eighteen-month limit because the settlement of the retaliatory tax is related to and dependent on the gross premiums tax settlement.

Our Supreme Court has been reluctant to permit two taxes that are closely related, even when they are filed together, to be settled together if that causes one of the tax settlements to be untimely in violation of a statutory deadline. *Commonwealth v. Western Maryland Railway Co.*, 435 Pa. 525, 257 A.2d 530 (1969). Guardian argues, and we agree, that "pairing" the settlement of returns for administrative convenience does not justify a late settlement and is insufficient to extend a statutory settlement deadline. *Id.*, 435 Pa. at 533, 257 A.2d at 534. To do so would "erode the vitality of the legislative time scheme and ... destroy the desirable certainty in tax administration." *Commonwealth v. Wanamaker*, 450 Pa. 77, 87, 296 A.2d 618, 622–23 (1972).[7]

The goals of effectuating legislative intent and encouraging reasonable administration of the tax laws persuade us to read the Retaliatory Statute as allowing the settlement of retaliatory tax and gross premiums tax together, within the eighteen-month limit. Therefore, although there is arguably an unavoidable "pairing" of these two measures because of their relationship, the prohibition against excusing late settlements by pairing does not apply here because the department is not attempting to excuse a late settlement here. Indeed, the very issue here is whether the settlement is late or not.

Finally, Guardian argues correctly that, because there has been no delay on the part of the taxpayer or any evidence of circumstances which justify delay in settling, the department

7. Pairing one year's return with a prior year's is insufficient to justify a late settlement by the department, *Commonwealth v. Safe Harbor Water Power Corp.*, 423 Pa. 101, 223 A.2d 223 (1966); pairing two different types of returns with different deadlines is not an excuse for lateness, *Western Maryland Railway Co.;* nor can the department validly delay settlement to pair one taxpayer's return to another taxpayer's, *Safe Harbor Water Power Corp.*, 423 Pa. at 107–08, 223 A.2d at 227.

cannot successfully argue that it settled the retaliatory tax "as far as possible" within the one-year limit.[8] Our Supreme Court has narrowly interpreted the statutory language "as far as possible" to excuse the department's late settlement on a general basis, only "when the taxpayer does something to delay timely action." *Safe Harbor Water Power Corp.,* 423 Pa. at 105, 223 A.2d at 226.[9]

However, we do not hold here that the department's settlement of Guardian's retaliatory tax was excused for lateness because it was settled "as far as possible" within the one-year limit. Instead, we find that the department timely settled Guardian's 1985 retaliatory tax within the applicable eighteen-month limit, so that *no excuses for lateness are necessary.*

Accordingly, we affirm the board.

## ORDER

NOW, June 10, 1992, the decision and order of the Board of Finance and Revenue, Docket No. C–17,250, dated April 26, 1988, is affirmed and, in accordance with the parties' stipulations, the retaliatory tax shall be recomputed to reflect post-settlement adjustments to the Guardian Life Insurance Company of America's federal income tax return, unless exceptions are filed within thirty days, pursuant to Pa.R.A.P. 1571(i).

---

8. 72 P.S. § 801(b) states that settlements shall be made "as far as possible" within the one-year limit, and 72 P.S. § 7407(a) states that settlements shall be made "so far as possible" within the eighteen-month limit. These two quoted phrases are, of course, identical in meaning.

9. *See also, Western Maryland Railway Co., Wanamaker, West Penn Power Co.* and *Commonwealth v. Bessemer and Lake Erie Railroad Co.,* 57 Pa.Commonwealth Ct. 340, 427 A.2d 699 (1981), all of which narrowly interpret excuses for late settlement by the department.