618 A.2d 1155

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1992.

Decided Dec. 8, 1992.

Christopher K. Walters, for petitioner.

Kevin A. Moury, Deputy Atty. Gen., for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

COLINS, Judge.

Presently before this Court, pursuant to Pa.R.A.P. 1571(i), are the exceptions filed by the United Services Automobile Association (USAA) to our May 21, 1992 opinion and order,[1] which affirmed the January 20, 1988 order of the Board of Finance and Revenue (Board) sustaining the resettlement of USAA's gross premiums tax for 1985.

■ An appeal to this Court from an order of the Board is conducted de novo. As fact-finder, this Court may resolve factual disputes, but, in the present matter, there is no factual dispute, and this Court, in *USAA I*, adopted the parties' stipulation of facts. *Guardian Life Insurance Company of*

1. *United Services Automobile Association v. Commonwealth*, (No. 364 C.D. 1988, filed May 21, 1992) (*USAA I*), a panel decision reviewing a determination of the Board of Finance and Revenue pursuant to Pa. R.A.P. 1571, to which the Honorable Bernard L. McGinley dissented.

Pa.R.A.P. 1571(i) provides, in pertinent part: "Any party may file exceptions to an initial determination by [this Court] under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect ... of an order expressly granting reconsideration of the determination previously entered by [this Court]."

*America v. Commonwealth,* 148 Pa.Commonwealth Ct. 430, 611 A.2d 797 (1992). "Our scope of review in tax appeals is ... limited to the construction, interpretation and application of a State tax statute to a given set of facts." *Escofil v. Commonwealth,* 46 Pa. Commonwealth Ct. 475, 477, 406 A.2d 850, 852 (1979), *affirmed per curiam,* 499 Pa. 207, 452 A.2d 1012 (1982). As stated in footnote 1 herein, timely exceptions have the effect of an order granting reconsideration.

USAA is a reciprocal interinsurance exchange formed under the laws of Texas for the purpose of selling and writing casualty insurance. It is also licensed by Pennsylvania to write personal lines of insurance, including fire and casualty insurance.

For the year ending December 31, 1985, USAA was subject to the gross premiums tax imposed by Section 902(a) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7902(a). Section 902(a) of the Code provides that "[e]very insurance company ... transacting business in the Commonwealth of Pennsylvania, shall pay to the [Department of Revenue], a tax at the rate of two percent of the gross premiums and annuity considerations received from business done within this Commonwealth during each calendar year...." For 1985, USAA reported taxable gross premiums of $33,485,999, which resulted in a tax of $669,720. That amount was settled by the Department of Revenue (Revenue) and was approved by the Auditor General on or about July 29, 1986.

On June 16, 1987, Revenue, with approval from the Auditor General, resettled USAA's gross premiums tax for 1985 by assessing a "retaliatory tax"[2] in the amount of $542,374.02, pursuant to Section 212 of The Insurance Department Act of one thousand nine hundred and twenty-one, Act of May 17,

**2.** We will refer to the assessment authorized by Section 212 of the Act as the "retaliatory tax," although the Pennsylvania Supreme Court has held that the assessment is more akin to "a license fee or other similar charges." *Commonwealth v. Fireman's Fund Insurance Company,* 369 Pa. 560, 564, 87 A.2d 255, 258 (1952).

1921 (Act), P.L. 789, *as amended,* 40 P.S. § 50. Section 212 of the Act provides, in pertinent part:

If any other state imposes any burdens or prohibitions on insurance companies, or agents of this state doing business in such other state, which are in addition to, or in excess of, the burdens or prohibitions imposed by this Commonwealth on insurance companies and agents, like burdens and prohibitions shall be imposed on all insurance companies and agents of such other state doing business in this Commonwealth, so long as the burdens and prohibitions of such other state remain in force. In applying this section to an insurance company of another state, such company shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed by the laws of such other state and any political subdivision thereof upon a like company of this Commonwealth transacting the same volume and kind of business in such other state.

Section 212 of the Act, 40 P.S. § 50, defines the term "burdens or prohibitions" as including "taxes, fines, penalties, licenses, fees, rules, regulations, obligations, and prohibitions, including prohibitions against writing particular kinds of insurance by insurance companies, and restrictions on the payment or division of commissions to or with insurance agents or brokers licensed under the laws of this Commonwealth."

USAA timely filed a petition for review with the Board, on October 2, 1987. Thereafter, after hearing and oral argument, the Board refused the petition for review and sustained the resettlement. USAA then filed a timely petition for review with this Court, and, in *USAA I,* this Court affirmed the order of the Board. This Court stated:

The obvious, singular and significant difference between the Pennsylvania gross premiums tax and Texas' is that Pennsylvania's tax is an invariable flat rate of 2% without conditions or exceptions, whereas that of Texas is variable and dependent upon the amount of monies the affected insurance company has invested in certain investments in

Texas defined as 'Texas investments.'[3]

*USAA I*, slip op. 8–9.

■ USAA, according to *USAA I*, argued "that where state laws differ considerably in method of computation of the gross premiums tax the better approach is one where retaliatory taxes are assessed on a company-by-company approach as mandated by Section [212 of the Act], 40 P.S. § 50, as opposed to a state-by-state approach." *USAA I*, slip op. 9. USAA set forth the following suggested test, according to *USAA I*:

Where a foreign state's system of taxation is graduated based on investment in specified "state investments", then, in order to ascertain whether under the foreign state's tax regime local insurance companies are subject to greater tax burdens, the court must ask at what rate a "similarly situated" or "like" local insurance company would be taxed in the foreign state.

A "similarly situated" or "like" local insurance company is one with the same investment in foreign securities (for gross

3. Article 4.10 of the Texas Insurance Code provides for a gross premiums tax. Section 7 therein provided, for the year at issue, 1985:

The amount of tax imposed shall be determined on the basis of the amount that such insurance carrier owned on the 31st day of December preceding of Texas investments as defined herein, and the amount such insurance carrier owned on said date of similar investments in the comparison state. 'Comparison state' is defined as the state (other than Texas) in which such insurance carrier owned the largest amount of such investments.

Section 10 of Article 4.10 provides:

There is imposed on each such insurance carrier an annual tax equal to 3.5% of its premium receipts. Any insurance carrier may qualify for a tax rate lower than the 3.5% imposed by this article. Such qualification for a lower rate can be accomplished in the following two ways:

(a) If such insurance carrier as of December 31 preceding owns Texas investments in an amount in total value which is not less than 85% nor more than 90% of the amount such insurance carrier owned in the comparison state in similar investments as herein defined, the tax imposed shall be equal to 2.4% of its gross premium receipts.

(b) If such insurance carrier as of December 31 preceding owns Texas investments in an amount in total value which is in excess of 90% of the amount such insurance carrier owned in the comparison state in similar investments as herein defined, the tax imposed shall be equal to 1.2% of its gross premium receipts.

Tex.Ins.Code Ann. § 4.10 (West 1981).

premiums tax assessment purposes) as the foreign corporation actually maintains in the retaliating state's securities. Restated, but to the same effect, a "similarly situated" or "like" local insurance company is merely the foreign insurance company taxed locally "as if" the local rule of taxation is that of the foreign jurisdiction. (Footnote omitted.)

*USAA I,* slip op. 10.

In *USAA I,* relying on its interpretation of case law and what it deemed the "unequivocal language of Section [212] of .the Act," this Court held that a state-by-state analysis is required in retaliatory tax matters. This Court, therefore, concluded that USAA is subject to the retaliatory tax and affirmed the order of the Board. The Honorable Bernard L. McGinley dissented, stating that the decision ignored the following sentence of Section 212 of the Act:

In applying this section to an insurance company of another state, such company shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed by the laws of such other state and any political subdivision thereof upon a like company of this Commonwealth transacting the same volume and kind of business in such other state.

Judge McGinley then stated that he "would interpret the phrase 'like company of this Commonwealth' to include Pennsylvania insurance companies with levels of investments in Texas similar to [USAA's] investments in Pennsylvania." *USAA I,* dissenting slip op. 1–2. He would, therefore, have reversed the Board and would not have assessed a retaliatory tax against USAA for 1985.

USAA timely filed exceptions and raised two general questions. First, USAA questioned whether the panel erred by holding that Section 212 of the Act, 40 P.S. § 50, mandated a state-by-state analysis. Second, USAA questioned whether the panel erred when it did not hold that a "like company of this Commonwealth" is a Pennsylvania insurance company holding a level of Texas investments equal to the level of USAA's Pennsylvania investments.

We agree with Judge McGinley and with USAA that Section 212 of the Act, 40 P.S. § 50, requires a company-by-company analysis. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Section 212 clearly states: "In applying this section to *an insurance company* of another state, *such company* shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed ... upon a *like company* of this Commonwealth transacting the same volume and kind of business in such other state." (Emphasis added.) A Pennsylvania insurance company holding Texas investments in an amount equal to the Pennsylvania investments held by USAA would be assessed a gross premiums tax of 1.2%, and, in fact, 11 of the 24 property and casualty insurers domiciled in Pennsylvania but doing business in Texas were taxed at the 1.2% rate. Stipulation of Fact No. 18.

Our review of the cases relied upon in *USAA I* finds nothing in them which mandates the state-by-state analysis which *USAA I* requires. In *Occidental Life Insurance Company of California v. Commonwealth,* 6 Pa. Commonwealth Ct. 532, 295 A.2d 853 (1972), Pennsylvania imposed the retaliatory tax on Occidental Life Insurance Company of California (Occidental), because California's gross premiums tax was higher than that of Pennsylvania. Occidental, however, sought a credit on the tax due, because it paid sales and use tax to Pennsylvania but was not required to do so by California. A "like" Pennsylvania company, therefore, transacting the same volume and kind of business in California, would pay, in the aggregate, a smaller amount of tax. This Court held that Occidental was entitled to a credit. We said that "[t]he purpose of a retaliatory charge is to bring about equality of treatment. Foreign insurance companies are to be treated by Pennsylvania in *precisely the same manner* as Pennsylvania companies are treated by their home state." 6 Pa. Commonwealth Ct. at 535, 295 A.2d at 854 (emphasis added). We stated further, quoting

*Commonwealth v. Fireman's Fund Insurance Company,* 369 Pa. 560, 564, 87 A.2d 255, 258 (1952), that

> the retaliatory tax 'is certainly not a revenue raising measure. In fact, its success might be said to depend on how little is collected under its terms rather than how much. It is designed to bring about equality of treatment between domestic and foreign corporations and to break down interstate barriers.'

6 Pa.Commonwealth Ct. at 535, 295 A.2d at 855. We held that Occidental was entitled to its credit, because if it were not granted the credit, it would not have received treatment equal to that received by a "like" Pennsylvania insurance company doing the same volume and kind of business in California. We find nothing in Occidental that requires us to hold that Section 212 of the Act, 40 P.S. § 50, mandates a state-by-state analysis.

Similarly, *USAA I* relies upon *Providence Washington Insurance Company v. Department of Revenue, Board of Finance and Revenue,* 75 Pa. Commonwealth Ct. 463, 463 A.2d 68 (1983), *affirmed per curiam,* 504 Pa. 506, 475 A.2d 741 (1984), wherein a Rhode Island insurance company doing business in Pennsylvania was subject to a two percent gross premiums tax in each state but was also subject to an additional one and one-half percent tax on its sale of workmen's compensation premiums in Rhode Island. This Court affirmed the Board's imposition of a one and one-half percent retaliatory tax on the workmen's compensation premiums collected by that insurance company in Pennsylvania, because a "like" Pennsylvania insurance company doing the same volume and kind of business in Rhode Island would have been assessed the additional gross premiums tax on its workmen's compensation premiums. Quoting *Western & Southern Life Insurance Company v. State Board of Equalization,* 451 U.S. 648, 668–69, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981), which therein quoted Annotation, *Constitutionality, construction, operation, and effect of retaliatory statutes against foreign corporations doing business within state,* 91 A.L.R. 795, 795 (1934), we stated:

> [W]hatever their character, it is obvious ... that their ultimate object is not to punish foreign corporations doing business in the state, or retort the action of the foreign state in placing upon corporations of the enacting state doing business therein burdens heavier than those imposed upon corporations of such foreign state doing business in the enacting state, but to induce such foreign state to show the same consideration to corporations of the enacting state doing business therein as is shown to corporations of such foreign state doing business in the enacting state.

*Providence Washington,* 75 Pa. Commonwealth Ct. at 469, 463 A.2d at 71. We further stated that the retaliatory tax is calculated by creating an equation, on each side of which are the burdens or prohibitions imposed by each of the respective states involved. Again, nothing contained in *Providence Washington* requires us to hold that Section 212 of the Act, 40 P.S. § 50, mandates a state-by-state analysis.

Recently, this Court decided *Executive Life Insurance Company v. Commonwealth,* 147 Pa.Commonwealth Ct. 105, 606 A.2d 1282 (1992), wherein we stated that

> the first sentence of [Section 212] is meant only to determine when the statute comes into play. It is the second sentence which sets forth the method for how the charge is to be applied and calculated: 'In applying this section to an insurance company of another state, such company shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed by the laws of such other state and any political subdivision thereof upon a like company of this Commonwealth transacting the same volume and kind of business in such other state.' This sentence directs [Revenue] to compare the burdens on an individualized basis....

*Id.* at 111, 606 A.2d at 1284–85. The plain meaning of Section 212 of the Act, 40 P.S. § 50, and *Executive Life* requires this Court to analyze the gross premiums tax burden on Texas companies doing business in Pennsylvania on a company-by-company basis.

Finding that a Pennsylvania company likened to USAA and transacting the same volume and kind of business in Texas that USAA transacts in Pennsylvania would be taxed at the rate of 1.2%, we sustain USAA's exceptions and hold that USAA's gross premiums tax liability for 1985 is limited to $669,720.

## ORDER

AND NOW, this 8th day of December, 1992, the exceptions of the United Services Automobile Association (USAA) are sustained. The panel decision of this Court in *United Services Automobile Association v. Commonwealth*, (No. 364 C.D. 1988, filed May 21, 1992) is vacated, and the order and resettlement of the Department of Revenue, Board of Finance and Revenue, at Docket No. R–11,147 is reversed. The gross premiums tax liability of USAA for 1985 is limited to $669,720.

DOYLE and SMITH, JJ., dissent.