**SELECTIVE WAY INSURANCE COMPANY, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2010.

Decided June 30, 2010.

Stephen D.D. Hamilton, Philadelphia, for petitioner.

John J. Butchar, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Selective Way Insurance Company (Selective Way) petitions for review of an order of the Board of Finance and Revenue (Board), denying Selective Way's request for a refund of retaliatory taxes it paid for tax year 2006.[1] The Board rejected Selective Way's request for refund of retaliatory tax. In so doing, the Board held that in calculating the premium tax burden of a Pennsylvania insurance company like Selective Way doing business in New Jersey, the Department of Revenue (Department) appropriately applied New Jersey's stated gross premium tax

1. Selective Way also petitions this Court to review similar denials for tax years 2003, 2004, and 2005, which are separately docketed as Nos. 426, 427, & 428 F.R. 2008. The parties, however, requested that the Court treat this matter as the lead case to resolve the substantive legal issue common to all of the cases. We have stayed the other three cases, pending the resolution of the legal issue now before the Court in this matter.

rate of 2.1% to the gross premium amount Selective Way reported for its Pennsylvania business in tax year 2006. The Board rejected Selective Way's argument that the Department was required to apply a New Jersey law that caps the taxable premium at the lower of actual premium from business within the state or 12.5% of worldwide premium. We now reverse.

■ Simply stated, to determine whether a retaliatory tax is due, the Department must compare, *inter alia,* the premium tax a foreign insurance company owes in Pennsylvania to what a like Pennsylvania insurance company would pay in premium tax in the foreign state. If the like Pennsylvania insurance company's premium tax obligation in the foreign state would be higher than the foreign insurer's obligation in Pennsylvania, then the foreign insurer is subject to a retaliatory tax for the difference.

The stipulated facts in this matter are as follows:

1. [Selective Way] is a casualty and marine insurance company formed under the laws of the State of New Jersey.

2. Selective Way began doing business in Pennsylvania prior to June 30, 1984.

3. During the 2006 tax year, Selective Way had several offices in Pennsylvania and had over 100 employees in Pennsylvania.

4. For New Jersey premium tax purposes, if a foreign insurance company (such as an insurance company formed under the laws of the Commonwealth of Pennsylvania) has been doing business in New Jersey since June 30, 1984 or earlier, the company's premiums that are subject to New Jersey premiums tax are capped at 12.5% of the worldwide premiums (including policy fees, and net of any dividends to policyholders) of the company, regardless of the actual amount of premiums received from New Jersey sources. (For insurance companies that began doing business in New Jersey after June 30, 1984, the 12.5% cap is applied on a group-wide basis rather than a separate-company basis.)

5. For the 2006 tax year, Selective Way's total worldwide premiums (including policy fees, and net of any dividends to policyholders) were $475,674,712. 12.5% of that amount is $59,459,339.

6. For the 2006 tax year, Selective Way's total taxable premiums (net of any dividends to policyholders) from Pennsylvania sources were $91,711,048, and Selective Way's total policy fees from Pennsylvania sources were $239,391.

7. Aside from any retaliatory tax, the rate of Pennsylvania tax applicable to insurance company premiums in 2006 was 2.0%, so that Selective Way's Pennsylvania premiums tax on its $91,711,048 of Pennsylvania-source taxable premiums was $1,834,221.

8. In 2006, the New Jersey premiums tax rate, aside from the effect of any retaliatory tax, was 2.1%. Also, New Jersey, unlike Pennsylvania, included policy fees in the total amount of taxable premiums.

9. On October 19, 2006, the New Jersey Supreme Court issued a decision in *American Fire & Casualty Company v. Director, Division of Taxation,* 189 N.J. 65, 912 A.2d 126 (2006).

10. In Selective Way's Pennsylvania premiums tax return as originally

filed on March 26, 2007, Selective Way computed its Pennsylvania retaliatory tax liability without taking into account the effect of the 12.5% cap. Selective Way's original retaliatory tax calculation for the 2006 tax year was as follows:

|  | Pennsylvania | New Jersey |
|---|---|---|
| Fire, Casualty and Title Premiums Tax | $1,834,221 | $1,930,959 [2] |
| Worker's Compensation Tax | $ 0 | $ 6,930 |
| NJ Special Purpose & M.V. Resp. | $ 0 | $ 72,444 |
| Fraud Assessments | $ 0 | $ 0 |
| PA Auto Theft Prevention Authority | $ 11,270 | $ 0 |
| Annual Statement Fee | $ 850 | $ 0 |
| Agent Licensing Fee | $ 55,290 | $ 0 |
| Totals | $1,901,631 | $2,010,333 |
| Retaliatory Tax Payable |  | $ 108,702 |

11. In light of its interpretation of the *American Fire* decision, Selective Way filed an amended return with the Department on April 9, 2007, reporting the following calculation of retaliatory tax, in which the calculation of the New Jersey tax on premiums took into account the 12.5% cap:

|  | Pennsylvania | New Jersey |
|---|---|---|
| Fire, Casualty and Title Premiums Tax | $1,834,221 | $1,248,646 |
| Worker's Compensation Tax | $ 0 | $ 6,930 |
| NJ Special Purpose & M.V. Resp. | $ 0 | $ 72,444 |
| Fraud Assessments | $ 0 | $ 0 |
| PA Auto Theft Prevention Authority | $ 11,270 | $ 0 |
| Annual Statement Fee | $ 850 | $ 0 |
| Agent Licensing Fee | $ 55,290 | $ 0 |
| Totals | $1,901,631 | $1,328,020 |
| Retaliatory Tax Payable |  | $ 0 |

12. The Department of Revenue did not accept Selective Way's amended return.

13. On June 1, 2007, Selective Way filed a timely petition for resettlement with the Board of Appeals requesting a refund of the 2006 retaliatory tax, based on the figures set forth in paragraph 11 of this stipulation.

14. On June 11, 2007, the Department of Revenue issued its settlement of Selective Way's premium tax for the tax year 2006, adopting Selective Way's calculations as originally filed, i.e., the figures set forth in paragraph 10 of this stipulation.

15. The Board of Appeals denied Selective Way's petition for resettlement. The Board of Appeals decision and order was mailed on November 7, 2007. . . .

16. On December 11, 2007, Selective Way filed a timely petition for re-

---

**2.** As the table illustrates, premium tax is but one consideration in the retaliatory tax calculation.

view with the Board of Finance and Revenue.

17. The Board of Finance and Revenue denied Selective Way's petition....

18. On May 23, 2008, Selective Way filed a timely petition for review with this Court.

On appeal, Selective Way argues that the Board erred in its application of Pennsylvania's retaliatory tax statute by failing to calculate Selective Way's retaliatory tax obligation based on the *actual* premium tax that a similarly-situated Pennsylvania insurance company would pay in New Jersey. Relying on this Court's decision in *United Services Automobile Association v. Commonwealth*, 152 Pa.Cmwlth. 184, 618 A.2d 1155 (1992) *(USAA)*, Selective Way argues that the Board should have factored into its calculations a portion of New Jersey law that caps a foreign insurer's taxable premium at 12.5% of the insurer's worldwide premium. By failing to apply the cap, the Board assessed a retaliatory tax on Selective Way that is based on a fictional, much higher premium tax than what a similarly-situated Pennsylvania company would actually pay in New Jersey. For these reasons, Selective Way argues that the Board's decision violates both the letter and the spirit of Pennsylvania's retaliatory tax statute.

The Commonwealth counters that the Board correctly ignored the 12.5% cap in calculating Selective Way's retaliatory tax in Pennsylvania. The Commonwealth relies on the New Jersey Supreme Court's decision in *American Fire & Casualty Company v. Director, Division of Taxation*, 189 N.J. 65, 912 A.2d 126 (2006). The Commonwealth argues that in *American Fire*, the New Jersey Supreme Court held that the 12.5% cap should not be considered when calculating a foreign insurer's retaliatory tax obligation. The Commonwealth argues that this Court should follow *American Fire* and, like the New Jersey Supreme Court, rule that the 12.5% cap should not be included in the calculation of Selective Way's Pennsylvania retaliatory tax. Because New Jersey imposes a higher rate of tax (2.1%) on premiums than does Pennsylvania (2.0%), retaliation is appropriate. Alternatively, the Commonwealth argues that application of the 12.5% cap would violate the Uniformity Clause of the Pennsylvania Constitution, because the cap does not apply uniformly to all Pennsylvania insurance companies doing business in New Jersey.

Pennsylvania's retaliatory tax statute provides, in pertinent part:

"**Burdens or Prohibitions**" includes taxes, fines, penalties, licenses, fees, rules, regulations, obligations, and prohibitions, including prohibitions against writing particular kinds of insurance by insurance companies, and restrictions on the payment or division of commissions to or with insurance agents or brokers licensed under the laws of this Commonwealth.

. . .

If any other state imposes any burdens or prohibitions on insurance companies, or agents of this state doing business in such other state, which are in addition to, or in excess of, the burdens or prohibitions imposed by this Commonwealth on insurance companies and agents, like burdens and prohibitions shall be imposed on all insurance companies and agents of such other state doing business in this Commonwealth, so long as the burdens and prohibitions of such other state remain in force. In applying this section to an insurance company of another state, such company shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed by the laws of

such other state and any political subdivision thereof upon a like company of this Commonwealth transacting the same volume and kind of business in such other state.

Section 212 of The Insurance Department Act of 1921 (the Act), Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 50 (emphasis added). The retaliatory tax due, if any, "is calculated by comparing the burdens that another state imposes on Pennsylvania insurance companies doing business in that state, to burdens that Pennsylvania imposes on foreign insurance companies doing business in Pennsylvania, and a retaliatory tax is designed to equalize those burdens." *Guardian Life Ins. Co. of Am. v. Commonwealth,* 148 Pa.Cmwlth. 430, 611 A.2d 797, 798 (1992).

In *Guardian Life,* we summarized the purpose of Section 212 of the Act as follows:

> The retaliatory tax, although commonly referred to as a "tax," is not technically a tax, but is more properly a business license fee or charge, imposed to regulate insurance companies. The purpose of [Section 212] and of similar laws enacted in almost every state, is to encourage equal treatment of domestic and foreign insurance companies, and to break down interstate barriers. [Section 212] "is certainly not a revenue raising measure. In fact, its success might be said to depend on how little is collected under its terms rather than how much."

*Id.* at 799 (citations omitted) (quoting *Commonwealth v. Fireman's Fund Ins. Co.,* 369 Pa. 560, 87 A.2d 255 (1952)).

With this background, we turn to Selective Way's claim that the Board erred in imposing a retaliatory tax on Selective Way, a New Jersey insurance company.[3] The dispute here focuses on the difference between Pennsylvania's and New Jersey's schemes for taxing insurance company premiums. Pennsylvania's scheme requires every insurance company doing business in the Commonwealth to pay "a tax at the rate of two per cent of the gross premiums received from business done within this Commonwealth during each calendar year." Section 902(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7902(a). In contrast, New Jersey imposes a premium tax rate of 2.1% on insurance companies offering the types of coverage that Selective Way offers—0.1% higher than Pennsylvania's premium tax rate. N.J.S.A. § 54:18A–2(a).

New Jersey's premium tax statute includes an additional provision that caps the amount of taxable premiums at 12.5% of the company's total worldwide premiums. N.J.S.A. § 54:18A–6(a). The stated legislative purpose for enacting the cap was to encourage insurance companies to conduct more business in New Jersey. *American Fire,* 189 N.J. at 70, 912 A.2d at 129. For companies licensed to do the business of insurance in New Jersey prior to June 30, 1984, worldwide premium for purposes of the cap must be calculated on a single-company basis. N.J.S.A. § 54:18A–6(a). For all other companies, worldwide premium may be calculated on a "group-wide" basis—*i.e.,* the premium attributable to the particular insurance company *and its affiliates. Id.*

The parties agree that a premium tax imposed by another state on a Pennsylva-

---

3. This Court reviews *de novo* the Board's determinations. *Kelleher v. Commonwealth,* 704 A.2d 729, 731 (Pa.Cmwlth.1997). Stipula-tions of fact are binding on the parties and the Court. *Id.* This Court, however, may draw its own legal conclusions. *Id.*

nia insurance company is a "burden or prohibition" under Section 212 of the Act that should be considered in assessing whether a foreign insurer doing business in Pennsylvania should be subjected to a retaliatory tax. The parties differ, however, on how the Commonwealth should calculate the premium tax burden of a Pennsylvania insurer doing business in New Jersey for purposes of determining whether retaliation is appropriate.

On this issue, we agree with Selective Way that this Court's prior opinion in *USAA* is on point. In *USAA,* a Texas insurance company challenged its retaliatory tax assessment. While Pennsylvania has a flat 2% premium tax rate, Texas, like New Jersey here, has certain conditions or exemptions that may impact the ultimate premium tax amount a Pennsylvania company would pay in Texas. Texas law provides a tiered rate structure. The default premium tax rate is 3.5% of Texas premium—1.5% *greater* than Pennsylvania's 2.0% rate. If, however, an insurance company makes certain investments in Texas, defined as "Texas investments," the company would qualify for a lower premium tax rate—2.4% or 1.2%, depending on the level of its "Texas investments." *USAA,* 618 A.2d at 1157.

▪ The question before the Court in *USAA* was whether calculation of the retaliatory tax due under Section 212 of the Act requires only a state-by-state comparison of premium tax rates in Texas and Pennsylvania, or, instead, whether it requires a company-by-company comparison to determine what a "like company of this Commonwealth" would pay in premium tax in Texas. This Court concluded that the express terms of Section 212 of the Act require a company-by-company approach. In reaching this conclusion, we relied on the following statutory language: " 'In applying this section to *an insurance compa-*

*ny* of another state, *such company* shall not be required to pay any taxes and fees which are greater in aggregate amount than those which would be imposed ... upon a *like* company of this Commonwealth transacting the same volume and kind of business in such other state.' " *USAA,* 618 A.2d at 1158 (emphasis in original) (quoting 40 P.S. § 50). Finding that a Pennsylvania company transacting business in Texas with investments at a similar level to USAA would pay premium tax at Texas's lowest 1.2% tax rate, this Court reversed the Board's imposition of a retaliatory tax on the Texas insurance company. *Id.* at 1160.

▪ We see no meaningful distinction between New Jersey's statutory scheme to encourage insurers to do more business in New Jersey—*i.e.,* the 12.5% cap on taxable premium—and Texas's scheme to encourage investments in Texas—*i.e.,* tiered premium tax rates based on levels of investments. One is a reduction in the premium tax *base,* whereas the other is a reduction in the premium tax *rate.* Both, however, have the potential of reducing the actual burden of the insurance company—the premium tax paid or owed. Under *USAA,* it is this *actual* burden, and not a mere comparison of the stated statutory premium tax rates, that the Department must consider in determining whether a foreign insurer must pay a retaliatory tax under Section 212 of the Act.

The Commonwealth claims that *American Fire* stands for the proposition that whenever a state seeks to determine, for retaliatory tax purposes, what its domestic insurers would pay in premium tax in New Jersey, it must disregard the 12.5% cap. We disagree. Like Pennsylvania, New Jersey has a retaliatory tax statute. N.J.S.A. § 17:32–15. At issue in *American Fire* was how New Jersey should calculate a foreign insurer's retaliatory tax

under that statute. The New Jersey statute is similar to Pennsylvania's and requires, *inter alia*, a comparison of the foreign insurer's premium tax obligation in New Jersey to the premium tax obligation of a like New Jersey insurer in the foreign insurer's home state. In *American Fire*, the New Jersey Supreme Court addressed complications in applying its retaliatory tax statute to a foreign company that also qualifies for the 12.5% taxable premium cap. *American Fire*, 189 N.J. at 78, 912 A.2d at 135.

The New Jersey Supreme Court recognized a potential conflict in the 12.5% cap and the retaliatory tax statute. A foreign insurer eligible for the cap might pay a premium tax in New Jersey that would be substantially lower than the amount a like New Jersey company might have to pay in the foreign company's home state without a similar cap. This disparity could lead to a retaliatory tax against the foreign insurer in New Jersey, offsetting, in whole or in part, any incentive the New Jersey legislature sought to bestow through the 12.5% cap on foreign insurers to do more business in New Jersey. *Id.* at 75–76, 912 A.2d at 133. The New Jersey Director of the Division of Taxation (Director) insisted that the cap must be considered in determining whether a foreign insurer should pay a retaliatory tax, even if it means that the financial benefit of the cap could be recaptured entirely by a retaliatory tax.

Relying primarily on the legislative intent of the two statutory provisions, the New Jersey Supreme Court held that "a proper interpretation of the two statutes must ensure both that the premium tax cap statute encourages insurers to conduct more business in this State and that the retaliatory tax statute operates to promote 'even-handed treatment' from sister states in their application of tax laws to New Jersey insurers." *Id.* at 82, 912 A.2d at

137. It thus rejected the Director's interpretation, because, under his reading, "the premium tax cap provides no incentive for foreign insurers to conduct business in the State because the retaliatory tax fully recaptures any benefit provided by the premium tax cap." *Id.* Instead, the court found that the only way to harmonize the two provisions was to exclude the premium tax cap from the calculation of a foreign insurer's New Jersey retaliatory tax:

> That interpretation effectuates the intent of the retaliatory tax statute by deterring other states from enacting discriminatory taxes that are above New Jersey's stated tax rate of 2.1%. To the extent that a state imposes a higher tax rate, thus subjecting New Jersey insurers operating in that state to a higher tax burden, foreign insurers from that state operating in New Jersey must pay retaliatory tax based on the rate difference. Moreover, plaintiffs' interpretation furthers the purpose of the premium tax cap statute because the retaliatory tax does not fully recapture the benefits afforded to an insurer by the premium tax cap. Therefore, foreign insurers are still encouraged to conduct more business in New Jersey because, once the statutory threshold is met, they will enjoy significant tax benefits.

*Id.* at 84, 912 A.2d at 138.

*American Fire* thus stands for the proposition that, when calculating whether a foreign insurer doing business in New Jersey should pay a *retaliatory tax*, the New Jersey Division of Taxation should calculate the foreign insurer's premium tax obligation in New Jersey *as if* the cap did not apply and compare that amount to what a like New Jersey insurer would pay in premium tax in the foreign insurer's home state. Only by doing so will the Division

of Taxation honor the intent of both the retaliatory tax and the 12.5% cap.

We do not face the same challenge in this case that the New Jersey Supreme Court faced in *American Fire.* We have no competing statutory provisions to harmonize. This case does not require us to determine whether a Pennsylvania insurer would owe a retaliatory tax *in New Jersey.* If that were the task before us, *American Fire* would surely be our guide. Our task, instead, is to determine whether a New Jersey insurance company doing business in Pennsylvania must pay a retaliatory tax in Pennsylvania. Under Section 212 of the Act, we compare what the New Jersey insurance company pays in Pennsylvania premium tax to the premium tax obligation of a like–Pennsylvania company in New Jersey. Under *USAA,* we must consider the *effective* tax rate or *actual* premium tax obligation/burden of the Pennsylvania insurance company in New Jersey and not rely simply on a comparison of the stated tax rates. This requires us to consider the 12.5% cap.

If we were to rule in favor of the Commonwealth in this matter and ignore the 12.5% premium cap in New Jersey, we would be endorsing one of the pitfalls that the New Jersey Supreme Court sought to avoid in *American Fire.* The Commonwealth asks this Court to accept a false premise that New Jersey would impose a higher premium tax burden on a Pennsylvania company transacting the same volume and kind of business in New Jersey as Selective Way. But doing as the Commonwealth asks would impose a retaliatory tax on a New Jersey insurer without an actual reason to retaliate. This would improperly convert the retaliatory tax from a tool intended "to apply pressure on other States to maintain low taxes on [Pennsylvania] insurers" to a revenue generating device for the Commonwealth. *Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal.,* 451 U.S. 648, 669–70, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981); *American Fire,* 189 N.J. at 83–84, 912 A.2d at 138. Imposing a retaliatory tax where, as here, Pennsylvania charges a higher premium tax on a foreign insurer than the foreign insurer's domiciliary state would charge a like Pennsylvania insurance company is simply not consistent with the clear language of Section 212 of the Act. Moreover, doing so would be in conflict with the intent behind the advent of the retaliatory tax, this Court's precedent in *USAA,* the United States Supreme Court's decision in *Western & Southern,* and even *American Fire,* on which the Commonwealth so heavily relies.

The Commonwealth argues, alternatively, that any consideration of the New Jersey premium cap in calculating a foreign insurer's retaliatory tax obligation in Pennsylvania would violate the Uniformity Clause of the Pennsylvania Constitution.[4] The Commonwealth notes that the New Jersey premium cap statute treats insurance companies licensed to do business in New Jersey prior to June 30, 1984, and those licensed to do business in New Jersey on or after June 30, 1984, differently. The latter may calculate worldwide premium on a group-wide basis (aggregating premium of all affiliate companies), while the former must calculate worldwide premium on a single-company basis. N.J.S.A. § 54:18A–6. Because of this disparity of treatment based on when an insurer is licensed to do business, the Commonwealth maintains that if it were to apply the 12.5% premium cap in the retaliatory

---

4. The Uniformity Clause provides: "All *taxes* shall be uniform, upon the same class of subjects, within the territorial limits of the au- thority levying the *tax,* and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1 (emphasis added).

tax calculation, it would violate the Uniformity Clause.

We reject the Commonwealth's Uniformity Clause challenge. "The [U]niformity [C]lause is only applicable to taxation." *Robison v. Fish & Boat Comm'n,* 166 Pa.Cmwlth. 97, 646 A.2d 43, 45 n. 7 (1994). As the Commonwealth recognizes in its brief, and as noted above, the "retaliatory tax" is not technically a tax. *See, e.g., Guardian Life,* 611 A.2d at 799. The charge is an exercise of the Commonwealth's police power to regulate the business of insurance, not to generate revenue. *Fireman's Fund,* 369 Pa. at 565, 87 A.2d at 258. The charge is thus distinguishable from taxes, which are "burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes, and to defray the necessary expenses of government." *Woodward v. City of Philadelphia,* 333 Pa. 80, 86, 3 A.2d 167, 170 (1938). Because the retaliatory tax is not a tax at all, the Uniformity Clause does not apply.

But even if the retaliatory tax were a tax, consideration of New Jersey law in calculating a New Jersey insurer's retaliatory tax obligation in Pennsylvania would not violate the Uniformity Clause. In *Fireman's Fund,* the Pennsylvania Supreme Court rejected a Uniformity Clause challenge to Section 212 of the Act: "Under Section 212 of the Act, foreign insurance companies are treated precisely the same *as our domestic companies are treated in their state.* This is both a reasonable and proper basis for classification." *Fireman's Fund,* 369 Pa. at 565, 87 A.2d at 258 (emphasis added). Accordingly, it is appropriate, and constitutional, for Pennsylvania to apply another state's laws to determine how Pennsylvania insurers would be treated. That is all that our decision requires. Indeed, to ensure uniformity, it is what is required in *every* case

where the Commonwealth applies Section 212 of the Act.

For all of the foregoing reasons, we reverse the order of the Board of Finance and Revenue.

### *ORDER*

AND NOW, this 30th day of June, 2010, the order of the Board of Finance and Revenue in the above-captioned matter, dated April 22, 2008, is REVERSED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. I believe that a close and thorough reading of the New Jersey Supreme Court's opinion in *American Fire & Casualty Company v. New Jersey Division of Taxation,* 189 N.J. 65, 912 A.2d 126 (2006), mandates that the order of the Board of Finance and Revenue denying Selective Way Insurance Company's petition for a refund of its retaliatory tax for the 2006 tax year be affirmed. It is well settled that the purpose of the retaliatory tax statute is to bring about equality in treatment between foreign and domestic insurance companies. *See Providence Washington Insurance Company v. Commonwealth,* 75 Pa. Cmwlth. 463, 463 A.2d 68 (1983). Thus, a foreign insurance company is to be treated by Pennsylvania in precisely the same manner as Pennsylvania companies are treated by the other state. *United Services Automobile Association v. Commonwealth,* 152 Pa.Cmwlth. 184, 618 A.2d 1155 (1992). As the Commonwealth points out, the purpose behind both the retaliatory tax statutes of New Jersey and Pennsylvania would be undermined by adopting the calculation proposed by Selective. It would

eliminate the retaliatory tax due in the state with the lower premiums tax rate (Pennsylvania) and impose retaliatory tax in New Jersey against Pennsylvania companies. This was noted with disapproval in *American Fire.*

Moreover, this Court's decision in *United Services* is clearly distinguishable. In that case, Texas had three possible statutory insurance premiums tax rates and the rate paid by any insurer depended upon its level of Texas investments. New Jersey's statutory rate does not change because of the cap—it remains at 2.1%. In *United Services,* all insurers were eligible to obtain the lower tax rates while in New Jersey only certain companies are even eligible to seek to apply the premiums cap, those who did business in New Jersey on or before June 30, 1984.

Accordingly, I would affirm the Board's order.